ETHEL C. JACKSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8601–79.     Filed May 4, 1981.

Ethel C. Jackson, pro se.
*Rosa Berman*, for the respondent.

RAUM, *Judge*: The Commissioner determined a $144 deficiency in petitioner's 1976 income tax. A portion of that deficiency is attributable to the Commissioner's disallowance of certain automobile expenses which petitioner does not contest. The only issue remaining for decision is whether petitioner, a licensed real estate salesperson, is entitled to a deduction for the cost of maintaining an office in her home.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference.

At the time of the filing of her petition and in 1976, petitioner was a resident of Garden Grove, Calif.

Petitioner is licensed under California law to act as a real estate salesperson, and she has been engaged in this business since 1961. Until 1979, petitioner was associated with Walker & Lee, Inc., a licensed real estate broker. Petitioner herself is not a real estate broker. Under California law, she could not set up an office at home and work independently out of that office without a broker's supervision. Moreover, California law requires that her license be in the custody of the real estate broker under whom she is licensed, and, as required by California law,

the business address on petitioner's license was that of Walker & Lee. Petitioner was not required nor could she, under the real estate regulations, keep original records of clients at home, although, as noted hereinafter, she does keep copies of such records at her home.

Notwithstanding that petitioner's written agreement with Walker & Lee designated her as an "independent contractor"— and the Government does not challenge her status as such—she does not in fact work for any broker other than Walker & Lee. Under that written agreement, she undertook to use her best efforts to sell real estate listed with Walker & Lee and to solicit additional listings and customers. Walker & Lee agreed to make real estate listings available to petitioner upon request, and to pay her the customary salesperson's commissions on her real estate transactions, after the collection of such commissions by Walker & Lee. Petitioner does not receive any commissions directly from the seller of property; such commissions are paid to Walker & Lee which in turn compensates petitioner. Walker & Lee also agreed to allow petitioner to use its office facilities. The agreement expressly provided that Walker & Lee had no authority to require petitioner to service any particular listings or to direct her hours, schedule, production, or means of carrying out her selling activities, except to the limited extent that California law imposes duties on a broker to exercise authority over its salespersons, such as the duty to exercise "reasonable supervision" over the activities of its salespersons. See Cal. Bus. & Prof. Code sec. 10177(h) (West Supp. 1981).

Petitioner lives alone in a three-bedroom home. She uses one room of her home as an office and has maintained an office in her home since 1963. The room thus utilized measures approximately 11 by 13 feet; it contains a desk, a sofa, a chair, as well as petitioner's files of the transactions she has been connected with in her years in the real estate business. It contains an extension of her home telephone, which is listed in her deceased husband's name. She has no business listing in the yellow pages, nor would she be permitted to have any such listing under California law. The room contains no television or entertainment facilities.

Petitioner's home is located some 8 miles from Walker & Lee's offices in the area she covers as a real estate salesperson, and her home office also offers a "relaxed atmosphere" for dealing with clients, including a fenced yard for clients' children. Moreover,

the availability of copies of materials in the files at petitioner's home office improves the service that she is able to render to her clients who call in the evenings or weekends. However, the record fails to provide convincing evidence that clients in fact came to her home office other than on sporadic occasions.

The "main" office in respect of petitioner's real estate activities was that of Walker & Lee's in Los Alamitos, approximately 8 miles from her home in Garden Grove. She had access to a desk and a telephone in a large room in the front of the real estate office, which also contained a number of other desks occupied by sales personnel. Petitioner was not required to work out of Walker & Lee's office. However, as a means of acquiring new customers, petitioner spent approximately 12 to 16 hours per week in Walker & Lee's office answering customer telephone inquiries and meeting with potential customers who came in off the street. Furthermore, Walker & Lee's name was more prominently displayed on her business card than her own name, and contained the firm's address and telephone number; although it also contained her residence phone number, it did not contain her home address. Clients calling petitioner at Walker & Lee would be given her home phone number. As noted above, petitioner's home telephone is listed under the name of her late husband, and clients not in possession of her home phone number would have to call Walker & Lee's office to obtain her telephone number.

Much of petitioner's work involved activities outside of any office, such as taking potential buyers to visit property or holding "open houses." If she obtained an offer, she might write up the deal at the house that was being shown. At times, the document was prepared in her automobile, or even at a restaurant. She did not often take the customer to Walker & Lee's office to write up the deal, nor does the record show that she took customers to her own home with any degree of frequency for that purpose.

Signs in front of properties offered for sale would show Walker & Lee as the broker and would contain the broker's telephone number and main office address. If the property were owned by a client obtained by petitioner there might also be a small "rider" showing her name and home phone number, but in no circumstances would such rider disclose petitioner's home address.

On Schedule C of her 1976 income tax return, petitioner claimed a $1,331 deduction for the cost of maintaining an office in her home. The Commissioner disallowed the entire deduction. However, to the extent that such deduction embodied mortgage loan interest and real estate taxes, the Commissioner allowed separate deductions in respect of such items.

## OPINION

Section 280A(a), I.R.C. 1954, provides as a general rule that "no deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." However, section 280A(c)(1) sets forth the following exceptions to the general rule:

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.

(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) as the taxpayer's principal place of business,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

Petitioner contends that her home office was her principal place of business and that it was used by customers in meeting with petitioner in the normal course of her business. The Government argues that the offices of Walker & Lee were petitioner's principal place of business; it does not claim that petitioner was an employee of Walker & Lee, thereby requiring that her office be maintained for the convenience of her employer. The Government further contends that petitioner's home office was only occasionally used for meeting clients, rather than being used to meet clients "on a regular basis," and was not used "exclusively" for meeting clients, as required by the statute. We find that petitioner has failed to establish that her home office was exclusively used on a regular basis as her principal place of business, or that it was regularly used to meet clients in the normal course of her trade or business. Petitioner is

thus not entitled to deduct the expenses of maintaining an office in her home, except to the extent of the expenses for interest and taxes, which are deductible without regard to the business use of her home, as allowed in the notice of deficiency.

In determining whether petitioner's home office was her principal place of business, we must examine the various locations in which petitioner conducted her business and ascertain which location was the "focal point" of her business activities. *Baie v. Commissioner*, 74 T.C. 105, 109 (1980); see *Curphey v. Commissioner*, 73 T.C. 766, 776 (1980), on appeal (9th Cir., Nov. 24, 1980). Although petitioner has established that her home office was helpful in her real estate sales activities, she has failed to persuade us that her home office was her *principal* place of business. In the ordinary course of the business, petitioner's first "contact" with clients would be through Walker & Lee's office, and she also spent 12 to 16 hours per week in the Walker & Lee offices as a means of acquiring new clients. To be sure, we are satisfied that petitioner had some clients whom she had known for a number of years, but we are not convinced that her activities at the Walker & Lee office were not a more significant source of clients. Petitioner's business card contained Walker & Lee's address and telephone number as well as the telephone number of petitioner's residence, but petitioner did not have a telephone listing in her own name. Although clients occasionally came to petitioner's home, a larger percentage of petitioner's clients met with her at open houses or elsewhere. In the circumstances, we find that petitioner has failed to carry her burden of proving that her home office was regularly and exclusively used as her principal place of business.

We similarly find that petitioner has failed to prove that her home office was regularly used as a place for meeting clients in the normal course of business. The congressional committee reports discussing the application of section 280A indicate that "Expenses attributable to *incidental* or *occasional* trade or business use of an exclusive portion of a dwelling unit would not be deductible even if that portion of the dwelling unit is used for no other purpose." S. Rept. 94–938, pp. 148–149 (1976), 1976–3 C.B. (Vol. 3) 186–187; see H. Rept. 94–658, p. 161 (1975), 1976–3 C.B. (Vol. 2) 853. (Emphasis added.) Although some of petitioner's clients did visit her home office, petitioner indicated that clients did not ordinarily come to her home. Moreover, petitioner

was unable to recall or estimate how many clients actually came to her home in 1976, and the record is not altogether clear as to the frequency and regularity of the client visits that actually occurred. In light of the unsatisfactory state of the record as to this issue, we are compelled to find that petitioner has not established that her home office was exclusively[1] and regularly used for meeting clients in the normal course of her business.

*Decision will be entered for the respondent.*

---

[1]There is also some indication in the record that petitioner used her home office to look after her personal financial affairs, and the evidence in this respect is too fragmentary to conclude that such use was merely on a comparatively de minimis basis, as petitioner would have us believe.