DENNIS A. ROTH and JUDITH M. ROTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roth v. Commissioner
Docket No. 2136-80.
United States Tax Court
T.C. Memo 1981-699; 1981 Tax Ct. Memo LEXIS 44; 43 T.C.M. (CCH) 45; T.C.M. (RIA) 81699; December 9, 1981. Dennis A. Roth, pro se. David D. Dahl, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $ 2,494.90 in petitioners' Federal income tax for the year 1977. The issues for decision are 1) whether petitioners are entitled to a claimed home office expense deduction of $ 1,116, 2) whether petitioners are entitled to a business bad debt deduction of $ 750 and 3) whether *46 petitioners have substantiated various claimed interest deductions, entertainment expense deductions and deductions for taxes paid in 1977. Petitioners Dennis A. Roth ("Roth") and Judith M. Roth, husband and wife, resided in Moreland Hills, Ohio, at the time they filed the petition in this case. They filed a joint tax return for the 1977 taxable year. Issue 1. Home Office Deduction
From January 1, 1977, to sometime in July, 1977, petitioners resided at a house in Beachwood, Ohio. In this house, petitioners claim, one room was set aside as a home office used by Roth in carrying on various trades or businesses. From July, 1977, to December 31, 1977, petitioners resided at a house in Moreland Hills, Ohio. Petitioners assert that, in the Moreland Hills house, one room was also set aside as a home office used by Roth. On their 1977 tax return, petitioners deducted $ 1,116 for "use of home & separate business phone for various investments, one room of 10 - house value in excess of 200,000.00." Respondent disallowed this deduction in full, citing section 280A. [1]
*47 Section 280A(a) provides as a general rule that "no deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." However, section 280A(c) sets forth the following exceptions to this general rule and limitations on those exceptions: (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.-- (1) CERTAIN BUSINESS USE.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) as the taxpayer's principal place of business, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. (5) LIMITATION OF DEDUCTIONS.--In the case of a use described in *48 paragraph (1), * * * the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or option thereof) was so used. In Curphey v. Commissioner, 73 T.C. 766 (1980), on appeal (9th Cir., Nov. 24, 1980), we held that a taxpayer could have more than one trade or business for purposes of section 280A. In the instant case, petitioners claim that Roth was engaged in the following separate trades or businesses during 1977: First, he was the employee of Dennis A. Roth Co., L.P.A. Second, he was employed by Mary Farmer's Nurses Registry & Employment Agency as its chief operating officer. Third, he was a promoter and general partner in four real estate partnerships and a limited partner in two other real estate partnerships. Fourth, he was the managing partner of a partnership involved in the leasing of automobiles and transportation equipment named Miden Leasing. Finally, he engaged in computer consulting, *49 particularly in the area of computer applications to the health care field. If a taxpayer's trade or business produces no gross income in the taxable year, section 280A(c)(5) disallows any deductions for home office expenses attributable to that trade or business. Druker v. Commissioner, 77 T.C.     (No. 60) (Oct. 15, 1981); Gestrich v. Commissioner, 74 T.C. 525, 530 (1980), on appeal (3d Cir., Dec. 17, 1980). Petitioners did not report any income from Roth's computer consulting work on their 1977 tax return. At trial, Roth testified that income from his computer consulting work was "derived through my legal practice," presumably not billed separately. Petitioners produced no evidence indicating how much gross income from the legal practice was attributable to Roth's computer consulting business. On this record, we find that petitioners have failed to demonstrate that Roth's computer consulting work produced any gross income in 1977; consequently, no home office deductions attributable to Roth's computer consulting activities are allowable. We hold, similarly, that petitioners have failed to show that any gross income was produced in Roth's Miden Leasing *50 business in 1977. Petitioners reported a loss of $ 7,197.64 with respect to Miden Leasing on their 1977 tax return. At trial, Roth testified that gross rental receipts were between $ 15,000 or $ 20,000 in 1977. Petitioners produced no records to back up this assertion. [2] Given this record, we hold that petitioners have failed to meet their burden of proof that any gross income was produced in connection with Miden Leasing in 1977; consequently, no home office deductions attributable to Miden Leasing are allowable. Druker v. Commissioner, supra.
Petitioners adduced evidence that Roth received gross income from his three other claimed trades or businesses in 1977. A Form W-2 indicates Roth received $ 95,000 in 1977 as an employee of Dennis A. Roth Co., L.P.A. Another Form W-2 indicates he received $ 6,800 in 1977 from Mary Farmer's Nurses Registry & Employment Agency in his work for that organization. *51 Finally, petitioners reported income of $ 216 from one of five real estate partnerships listed on their 1977 return. (For the remaining four partnerships, petitioners reported losses of $ 14,404.08, $ 93.62, $ 1,775.54 and $ 3,927.62, respectively.) As to these three claimed trades or businesses, we now proceed to apply the limitations on home office deductions contained in section 280A(c)(1). Petitioners assert that they are entitled to home office deductions because Roth "exclusively" and "regularly" used the home offices either as his principal places of business (section 280A(c)(1)(A)) or as a places for meeting with clients in the normal course of his businesses (section 280A(c)(1)(B)). In regard to Roth's trade or business as an employee of Dennis A. Roth Co., L.P.A., we are convinced that the home offices were not Roth's principal places of business. A taxpayer can only have one principal place of business for each trade or business under section 280A(c)(1)(A). No matter how "helpful" the existence of a home office is to a taxpayer's business, it may not provide the basis for a deduction unless it is the principal place of that business. Baie v. Commissioner, 74 T.C. 105 (1980). *52 Petitioner's evidence indicates that most of Roth's work for Dennis A. Roth Co., L.P.A. was performed at offices located in downtown Cleveland, Ohio: First, Roth testified that it was his tendency to work 10 to 12 hours a day, six to seven days a week. He went on to say that he maintained an office in his home for use in the evenings or on the weekends. A simple mathematical calculation of time indicates that on average he must have spent more time in his downtown Cleveland law office than in his home office. [3] Second, Roth had the services of a secretary at his downtown office but none at his home office. Finally, Dennis A. Roth Co., L.P.A., Roth's employer, lists its address as 1600 Central National Bank Building, Cleveland, Ohio, on Roth's Form W-2. We do not understand petitioners to argue that Roth maintained his principal place of business apart from that of his primary employer. [4] These three facts coupled with Roth's references at trial to his downtown Cleveland office as "my office" or "the office," persuade us that the home offices were not the principal places of business of his employment with Dennis A. Roth Co., L.P.A. *53 Similarly, petitioners have failed to show that the home offices were the principal places of business for Roth's real estate syndication "trade or business" or Roth's employment with Mary Farmer's Nurses Registry & Employment Agency. Petitioners failed to introduce any evidence as to where Roth's real estate activities were carried out. And petitioner's only evidence as to where the Nurse's Registry employment was performed was Roth's testimony that it was performed both at the main offices of the Nurse's Registry on Cedar Road in Cleveland Heights, Ohio, and in Roth's home as well. Petitioners bear the burden of proof on the issue of Roth's principal place of business in connection with these activities. Rule 142(a). [5] On this record they have failed to meet that burden. Petitioners' final argument on the home office issue is that the home offices were used as places to meet with clients in the course of Roth's business as an employee of Dennis A. Roth Co., L.P.A. Section 280A(c)(1)(B) provides that home office deductions may be allowed *54 when the home office is exclusively used on a regular basis as a place where the taxpayer meets with clients in the normal course of business. Roth testified that clients "on frequent occasions" met with him at his home in Moreland Hills, Ohio, rather than travel the 22-1/2 miles to Roth's downtown offices. Roth kept no records of such meetings, however, and could not state precisely how many meetings occurred. Facing a similar record in Jackson v. Commissioner, 76 T.C. 696 (1981), we stated: The congressional committee reports discussing the application of section 280A indicate that "Expenses attributable to incidental or occasional trade or business use of an exclusive portion of a dwelling unit would not be deductible even if that portion of the dwelling unit is used for no other purpose." S. Rept. 94-938, pp. 148-149 (1976), 1976-3 C.B. (Vol. 3) 186-187; see H. Rept. 94-658, p. 161 (1975), 1976-3 C.B. (Vol. 2) 853. (Emphasis added.) Although some of petitioner's clients did visit her home office, petitioner indicated that clients did not ordinarily come to her home. Moreover, petitioner was unable to recall or estimate how *55 many clients actually came to her home in 1976, and the record is not altogether clear as to the frequency and regularity of the client visits that actually occurred. In light of the unsatisfactory state of the record as to this issue, we are compelled to find that petitioner has not established that her home office was exclusively and regularly used for meeting clients in the normal course of her business. [76 T.C. at 700-701 (footnote omitted).] We see no reason not to follow our holding in Jackson here. Accordingly, petitioners are not entitled to home office deductions under section 280A(c)(1)(B). In summary, petitioners have failed to meet their burden of showing their entitlement to any home office deduction under section 280A. Issue 2. Business Bad Debt Deduction
On October 3, 1975, Roth lent one Vincent Amato ("Amato") the sum of $ 750. Amato was "the number-three man" in North-east OhioErie-wide Coordinating Agency ("NOECA"), Dennis A. Roth Co., L.P.A.'s second-largest client. Roth testified that the reason for his making the loan was that Amato had just recently gone through a divorce and was short of cash, unable to pay his bills. *56 In return for the loan, Amato signed a cognovit note payable to Roth in the amount of $ 1,100 and due in 90 days. The cognovit note empowered any attorney to appear in court after the note became due and confess judgment in favor of the holder. After the note became due around the beginning of 1976, Roth sought repayment. Amato at that time was living with his parents. Amato requested that Roth forbear on collection for a while since Amato was in a cash squeeze, and Roth complied. Roth made further unsuccessful attempts to collect the loan throughout 1976, but at no time did he begin court proceedings on the note. Sometime around the end of the year 1976, Amato left his employment with NOECA and disappeared. Roth and his secretary then began writing letters, making phone calls and personally contacting third parties in an attempt to find Amato. Amato's parents would not divulge their son's whereabouts. Other efforts to locate Amato proved similarly fruitless. Once, in 1977, Roth located Amato working for the Brecks Hill recreation department, but Amato soon left that employment and moved again. Once again, Roth lost tract of Amato. At this point, late in 1977, Roth *57 filed court papers seeking a judgment on the note in Cleveland Municipal Court. In 1980, Roth's secretary recognized Amato on a television evening news program. Amato was at that time the Acting Safety Director for the City of Cleveland. The secretary attempted to contact Amato at his office, but messages were not answered. Finally, on September 22, 1980, judgment was entered by the Cleveland Municipal Court against Amato on the note. A notice of garnishment was issued against the City of Cleveland for Amato's wages on January 8, 1981. On their 1977 tax return, petitioners deducted $ 750 as a "business bad debt-money loaned to client." Respondent disallowed such deduction, arguing in the alternative 1) that Roth had no basis in the debt, 2) that if Roth had a basis, the debt was not worthless at the end of 1977 or 3) that the debt, if worthless, was a nonbusiness bad debt. Section 166 allows a deduction for bad debts. The amount of any bad debt deduction, however, is limited to the taxpayer's adjusted basis in the debt. Section 1.166-1(d)(1), Income Tax Regs. Respondent argues that Roth lacked any adjusted basis in the debt since the $ 750 advanced to Amato was advanced *58 directly out of Roth's corporation, Dennis A. Roth Co., L.P.A., and not by Roth personally. Roth's testimony at trial was that the money loaned to Amato in 1975 was in fact taken out of the corporation prior to its advance to Amato. However, Roth claims, the $ 750 was treated by him as a taxable dividend from the corporation in 1975 and included in his taxable income that year. Respondent denies this assertion but has introduced no evidence to support his position. We found Roth's testimony to be credible on this issue and consequently hold that Roth had a $ 750 adjusted basis in the cognovit note. Respondent next argues that the cognovit note was not worthless at the end of 1977 and hence no deduction should be allowed under section 166(a) in that year. Disappearance of the debtor coupled with an apparent lack of leviable assets has often been held to justify allowance of a bad debt deduction in this Court. See, e.g., Nathan H. Gordon Corporation v. Commissioner, 2 T.C. 571, 584 (1943); T.P. Jones & Co. v. Commissioner, 2 B.T.A. 1218 (1925). Both Roth and his secretary testified that Amato had disappeared by the end of 1977. No leviable assets *59 were apparent: Amato was unemployed and had for a number of years been living with his parents. We think petitioners have carried their burden of proof on the issue of worthlessness. The mere fact of Amato's reappearance more than three years later, bringing with it new hope of repayment, we think is largely irrelevant to the issue of worthelessness viewed from 1977. At best we think this fact relevant to show that Roth and his secretary might have searched harder to find Amato; but for a debt the size of the one at issue here, we believe petitioners' search was adequate. Respondent's third argument is that even if the debt was worthless in 1977, it was a nonbusiness bad debt within the meaning of section 166(d). Petitioners concede that Roth was not in the business of lending money. However, they argue that Roth occasionally lent money to the clients of Dennis A. Roth Co., L.P.A., to keep the clients' business with the corporation and protect Roth's source of income. We think the facts here belie petitioner's argument. First, Amato was only the "number-three man" in NOECA. There is no evidence that loans by Roth to Amato were necessary to keep NOECA as a client. Second, *60 these loans were not made to a client, but an employee of a client. Thus petitioners' citation of Bart v. Commissioner, 21 T.C. 880 (1954) (loan to client to meet client's operating expenses and keep client solvent held business bad debt) is inapposite. We think the record is clear here that Roth lent the money to Amato for purely personal reasons. Under such circumstances, we conclude Roth's loan to Amato was a nonbusiness loan. See, e.g., McNeill v. Commissioner, 27 T.C. 899, 907-908 (1957), affd. 251 F.2d 863, 866-867 (4th Cir. 1958).
Issue 3. Interest, Taxes and Entertainment Expenses
In the statutory notice of deficiency, respondent disallowed the following additional deductions taken by petitioners in 1977: $ 1,148.65 of interest expenses, $ 1,159.66 of taxes and $ 673.81 of entertainment expenses. Respondent now concedes that $ 341.92 of interest expenses were improperly disallowed. As to these remaining disallowed deductions, petitioners bear the burden of proof. Rule 142(a). The only evidence petitioners have adduced to substantiate any of these claimed deductions are a series of check stubs from their checkbook. *61 No testimony was introduced to explain which of these stubs addressed which particular disallowed deduction.We note that respondent did allow petitioners substantial amounts of taxes paid and interest deductions in 1977. As a result, we cannot tell whether these check stubs relate to disputed or undisputed deductions. Lacking any other evidence on these deductions, we hold petitioners have failed to meet their burden of proof on these issues. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year before the Court.↩
2. We take this opportunity to observe that in preparing for trial, petitioners made no discernible effort whatsoever to comply with Rule 91(a), Tax Court Rules of Practice and Procedure↩, which in general requires the parties to stipulate facts to the fullest extent possible.
3. Assuming Roth worked eight hours at his downtown office on weekdays, he spent 40 hours at his downtown offices each week. Roth only claims to have worked, on average, a week of six and one-half days and 11 hours per day. This means his average work week was 6.5 X 11 = 71.5 hours. Forty hours is over half of his normal work week. ↩
4. Petitioners do argue that Roth's employer required him to keep a home office for the purposes of storing files and doing some work away from his downtown office. While sec. 280A(c)(1) requires that an employee may only deduct home office expenses if the home office is maintained for the convenience of his employer, satisfaction of that requirement is not by itself grounds for allowance of a home office deduction; the requirements of the first sentence of sec. 280A(c)(1) must also be met.↩
5. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩