JOHN W. GREEN AND REGINA R. Z. GREEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14722–79. Filed March 17, 1982.

---

John W. Green and Regina R. Z. Green, pro se.
*Thomas G. Schleier*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $986.44 in petitioners' Federal income taxes for 1976. After various concessions by respondent,[1] the sole issue for decision is whether petitioners are entitled, under sections 162(a) and 280A,[2] to a deduction of $840 as the cost of maintaining an office in their home.

### FINDINGS OF FACT

At the time the petition was filed, petitioners John W. Green (petitioner) and Regina R. Z. Green, husband and wife, were legal residents of Kailua, Hawaii. They timely filed a joint Federal income tax return for 1976 with the Internal Revenue Service.

During 1976, petitioner John W. Green was an employee of Dillingham Land Corp. (Dillingham), a real estate development firm in Hawaii. He worked as an account executive for the property management division, and was responsible for the administrative and physical management of seven condominiums. Each of these buildings had a resident manager of whom petitioner was the immediate supervisor; petitioner in turn was responsible to the board of directors of each building. From the seven buildings, petitioner dealt with approximately 49 people on a weekly, if not daily, basis.

Dillingham provided petitioner with an office in which he spent approximately 20 percent of his 8-hour workday. There, he attended to paperwork, and had a secretary who did typing,

---

[1]Respondent concedes that petitioners properly deducted automobile expenses of $2,817.22; medical expenses of $807 ($258 more than claimed on the return); telephone and entertainment expenses totaling $1,377.60, and miscellaneous itemized deductions totaling $1,947.69.

[2]All section references are to the Internal Revenue Code of 1954 as in effect during the tax year in issue, unless otherwise noted. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.

mailings, and took telephone messages. The remaining 80 percent of petitioner's workday was spent outside the office, in the "field," at jobsites, and at meetings with contractors and, occasionally, with board members.

Because he could not be reached during much of the day and because many of his callers could not themselves make telephone calls during the day, petitioner was required (as a condition of his employment) to receive a substantial number of telephone calls from Dillingham clients at his home after his regular working hours, averaging $2\frac{1}{4}$ hours a night, 5 nights a week. The calls came from condominium board members, resident managers, and others who wished to consult with him. Many of these individuals could not call him from their regular places of employment during office hours; others were themselves out in the field or engaged in construction or other nonoffice work during the day. Also, he would sometimes return calls from his home, responding to messages received during the day by his secretary.

To assist in servicing the Dillingham clients who called in the evenings, petitioner converted one bedroom of his three bedroom house into an office. In this home office, petitioner kept a telephone, which he used "strictly for incoming calls from board members, resident managers, et cetera, * * * that couldn't get * * * [him] during the day"; he also maintained some files to which he might need to refer during a telephone conversation, such as files of financial statements and upcoming meeting agendas. He did no routine paperwork in his home office.

In the notice of deficiency, respondent disallowed the claimed deduction.

### OPINION

Section 280A[3] denies certain deductions, otherwise permissi-

---

[3]Sec. 280A, as amended, provides in part:

(a) GENERAL RULE.—Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

* * * * * * *

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR

ble under section 162,[4] with respect to the use of a dwelling unit which is the taxpayer's residence. Ordinary and necessary business expenses incurred in the use of a dwelling unit are allowable, however, if a taxpayer shows that the item is allocable to a portion of the dwelling unit which is "exclusively" used on a "regular basis" as either (A) the taxpayer's "principal place of business" for any of his trades or businesses, (B) a place of business "used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business," or (C) is a separate structure; in the case of an employee, the exclusive use must also be for "the convenience of his employer." These criteria were enacted as part of the Tax Reform Act of 1976 to provide definitive rules to govern the allowability of deductions with respect to the use of a portion of a personal residence for business purposes; the rules were intended to replace the subjective section 162(a) "appropriate and helpful" standard employed in such cases as *Newi v. Commissioner*, T.C. Memo. 1969–131, affd. 432 F.2d 998 (2d Cir. 1970); *Bodzin v. Commissioner*, 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975); and later in *Sharon v. Commissioner*, 66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978). See S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 182–188.

Petitioner contends that he has met the requisite tests by

---

SUCH USE.—

    (1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

        (A) [as] the principal place of business for any trade or business of the taxpayer,

        (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business,

    *        *        *        *        *        *        *

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

    Sec. 280A was amended by Pub. L. 97–119, as signed into law Dec. 29, 1981. Prior to amendment, subsec. (c)(1)(A) read "(A) as the taxpayer's principal place of business." This amendment applies retroactively to tax years beginning after Dec. 31, 1975, except that, for tax years after Dec. 31, 1975, and before Jan. 1, 1980, the amendment applies "only to taxable years for which, on the date of the enactment of this Act, the making of a refund, or the assessment of a deficiency, was not barred by law or any rule of law." Sec. 113(e).

    [4]SEC. 162. TRADE OR BUSINESS EXPENSES.

    (a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business,
* * *

showing that his home office was regularly and exclusively used either as his principal place of business or as a place for meeting or dealing with clients in his normal course of business, and that the use was for his employer's convenience. Respondent argues that petitioner has failed to meet the "exclusive use" test, the "principal place of business" test, and the "regular use by clients * * * in meeting or dealing" with the taxpayer test. Respondent does not contest the reasonableness of the $840 office expense allocation. In effect, he has conceded that, if we find for petitioners, the $840 is deductible in full.

Both parties agree, at least implicitly, that the $840 expense was an ordinary and necessary business expense under section 162, and we concur in that view. We also find that petitioner used his home office exclusively and on a regular basis for meeting or dealing with clients and that this use was for the convenience of his employer. Accordingly, we hold that petitioners are entitled to the disputed deduction.

To establish exclusive use for business purposes, petitioner testified that the bedroom was "converted" into an office and that the telephone in the room was used "strictly" for business purposes. Respondent did not produce any evidence showing personal use, nor did his cross-examination undermine petitioner's credibility on this issue. There is no evidence of record to suggest that the room was used for any purpose other than to handle petitioner's business telephone calls. Petitioner also established the regularity of this use, as he testified that he used the room approximately $2\frac{1}{4}$ hours, 5 nights a week. We find that petitioner has sustained his burden of proof by showing the exclusive and regular use of the home office. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a).

Petitioner must show, in addition, that he meets one of the three specific use tests set forth at section 280A(c)(1)(A), (B), or (C), summarized above. Petitioner argues that he has met both (A), the principal place of business test, and (B), the meeting or dealing with clients test; respondent argues that petitioner fails both tests.[5] We do not think he has met the principal

---

[5]Petitioner clearly does not qualify under sec. 280A(c)(1)(C), which deals with a home office located in a separate structure.

place of business test, but we conclude that petitioner has complied with the section 280A(c)(1)(B) test.

Petitioner urges that, because he spent approximately equal amounts of time in his Dillingham and home offices, both offices should qualify as his principal places of business. There can be, however, but one principal place of business for each business. See *Jackson v. Commissioner*, 76 T.C. 696, 700 (1981); *Baie v. Commissioner*, 74 T.C. 105, 109 (1980);[6] *Curphey v. Commissioner*, 73 T.C. 766, 776 (1980), on appeal (9th Cir., Nov. 24, 1980). Moreover, the number of hours of use alone does not necessarily determine whether an office qualifies as the taxpayer's principal place of business. The test is whether the office is the "focal" point of the taxpayer's particular trade or business. *Jackson v. Commissioner, supra* at 700; *Baie v. Commissioner, supra* at 109; see *Curphey v. Commissioner, supra* at 776. We think that the Dillingham office meets that test. That office was provided by Dillingham, and Dillingham employed a secretary who worked there under petitioner's supervision and who took telephone messages for him when he was working in the field. In that office, petitioner did all the requisite paperwork connected with his employment. His home office was used mainly to receive and make telephone calls which were important to his business but which, as a practical matter, could not be handled in the office provided by Dillingham. Even though he spent about the same amount of time in both of his offices, we think the Dillingham office was the focal point of his employment and thus petitioner fails to meet the principal-place-of-business test prescribed by section 280A(c)(1)(A).

Respondent contends that petitioner also fails to qualify under section 280A(c)(1)(B) because the clients' use in meeting or dealing with petitioner was "incidental or occasional" rather than "regular" as required by section 280A(c)(1). *Jackson v. Commissioner, supra* at 700.[7] It is true that

---

[6]Sec. 280A(c)(1)(A) as amended makes clear that a taxpayer may have more than one principal place of business if he is engaged in more than one trade or business; the statute thus codifies this Court's approach. 188 Cong. Rec. S15484, S15487 (daily ed. Dec. 16, 1981).

[7]In S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 186–187, it is stated:

"In addition to the exclusive use test, the committee's amendment requires that the portion of the residence used for trade or business purposes must be used by the taxpayer on

petitioner testified that only three or four times in 1976 did clients personally come to his house, but we do not think that testimony is dispositive. The clients contacted petitioner by telephone on Dillingham business on a nearly nightly basis. Petitioner maintains that such contact constitutes "meeting or dealing" with him in a practical business sense within the meaning of section 280A(c)(1)(B).

We find little to guide us in determining whether a telephone call constitutes a "meeting or dealing" by a client or customer. Respondent does not cite any authority to support his contention that such meetings or dealings are limited to physical encounters, nor do we discover any. No doubt the typical situation the drafters of section 280A(c)(1)(B) had in mind was the doctor, the dentist, or the lawyer who maintains a home office, in addition to his principal office, where he meets with patients or clients. The meeting-or-dealing provision for allowance, however, is not limited to professional persons, and, by imposing a "convenience of his employer" requirement, Congress specifically recognized that an employee may qualify. We note that the proposed regulations for section 280A do not state that such meetings must be in person.[8] Nor does the legislative history set forth an "in person" requirement.[9]

The legislative history makes plain that Congress was concerned with taxpayers using home offices for their own convenience, and obtaining business deductions for the incre-

---

a regular basis in order for the allocable portion of the expenses to be deductible. Expenses attributable to incidental or occasional trade or business use of an exclusive portion of a dwelling unit would not be deductible even if that portion of the dwelling unit is used for no other purpose."

[8]Proposed Income Tax Regs. sec. 1.280A–2(c) provides:

(c) Use by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of business. Section 280A(c)(1)(B) provides an exception to the general rule of section 280A(a) for any item to the extent the item is allocable to a portion of the dwelling unit which is used exclusively and on a regular basis as a place of business in which patients, clients, or customers meet or deal with the taxpayer in the normal course of the taxpayer's business. This exception applies only if the use of the dwelling unit by patients, clients, or customers is substantial and integral to the conduct of the taxpayer's business. Occasional meetings are insufficient to make this exception applicable.

[9]S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 186, states that a deduction is allowed for a taxpayer who uses—

"a portion of a dwelling unit exclusively and on a regular basis * * * as a place of business which is used for patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * * "

mental or negligible expenses attributable to those offices; essentially, Congress concluded that taxpayers were deducting personal expenses. S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 182–186.[10] Congress chose to attack this perceived abuse, however, with language that specifically permits a deduction for a place of business used by clients in meeting or dealing with the taxpayer in the normal course of his business. Even if the term "meeting" were restricted to physical encounters, the addition of the word "dealing," used disjunctively, connotes a less immediate contact such as by a telephone call.

We think that petitioner falls within this statutory exception. Petitioner's normal course of business included his answering clients' questions and providing information to them on a regular basis, averaging more than 2 hours each evening, and generally being available to the clients when they needed him. Due to his, and sometime their, work schedules, this contact was assured only in the evenings.[11] As a condition of his employment, Dillingham required him to agree to take the telephone calls at his home. The extent to which he was able to satisfy his callers—the resident managers and members of the boards of directors of seven condominiums, a total of 49 persons—measured his effectiveness as an employee-account executive and, in turn, Dillingham's effectiveness in condominium management. Indeed, respondent does not argue that petitioner fails to meet the third test of section 280A, i.e., that the exclusive use of the home office was for the "convenience of his employer."

Summarizing, we emphasize that, in holding that petitioner

---

[10]S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185, states: "In many cases the application of the appropriate and helpful test [which was applied prior to the adoption of sec. 280A] would appear to result in treating personal living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home." See *Baie v. Commissioner*, 74 T.C. 105 (1980).

[11]The statute requires that the place of business be "used by * * * clients in meeting or dealing" with the taxpayer. The syntax here may suggest that it must be the clients who initiate the meeting or dealing. In the instant case, the telephone calls were nearly exclusively initiated by the clients; to make such calls, the callers in every real sense "used" both their telephones and petitioner's telephone and the office space in which he handled the calls. Petitioner would, therefore, qualify under a literal reading of this requirement. Had the statute been intended to limit the meeting or dealing requirement to "in person" contacts, we think the proposed regulations could, and would, have made this plain.

meets the "dealing" test of section 280A(c)(1)(B), we are not suggesting that telephone contacts will satisfy the statutory requirement in all situations. Indeed, in most situations, the opposite conclusion will probably be indicated. In the instant case, however, we find (1) that petitioner was required by his employer to take telephone calls from clients in the evenings; (2) that the calls were not incidental or occasional but rather were regular and continuous, consuming an average in excess of 2 hours, 5 evenings each week; (3) that petitioner set aside a room as an office which he used as a place of business exclusively for taking the calls and keeping files and information needed for handling them; (4) that the calls were initiated by his clients or customers who, due to his or their work schedules, could not reach him during the day; (5) that handling the calls at his home was essential to the effective discharge of his duties as an employee and to his employer's condominium management business; and (6) that respondent does not argue that petitioner fails to meet the "convenience of his employer" requirement.[12] Based on these findings, we hold that petitioner is entitled to the home office deduction claimed on his return.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, *J.*, concurring: In my judgment, the majority has reached the correct result based upon the facts at bar. It has concluded that the petitioner has proved the exclusive and regular use of a home office and has accepted respondent's concession that such use was for the convenience of his employer, thereby satisfying two of the three applicable requirements to deductibility set forth in section 280A(a) and (c). The dissenters do not challenge these factual determinations, but rather focus their disagreement on the contention that the use to which the room was put was not a qualifying business use since the only business conducted therein was

---

[12]In view of respondent's failure to argue this point, we express no views as to the standards prescribed by the "convenience of his employer" requirement.

over the telephone. They suggest that, therefore, the room was not "used by patients, clients, or customers in *meeting or dealing* with the taxpayer in the normal course of his trade or business." (Emphasis added.) They insist that some physical presence is required to satisfy the third requirement.

No doubt, in most situations there will be the presence of a patient, client, or customer. A "meeting" will take place. However, the statute includes the words "or dealing" with the taxpayer by patients, etc., and in choosing the word "dealing" it is fair to assume that Congress must have meant something less than a face-to-face confrontation between a taxpayer and his patient. Otherwise, quite clearly the latter is a mere surplusage, and the rules of statutory construction prevent us from so concluding. *United States v. Campos-Serrano*, 404 U.S. 293, 301 (1971); *United States v. Lexington Mill Co.*, 232 U.S. 399, 410 (1914). One dissenter repeatedly assumes that a physical presence is required, yet cites not one scintilla of legislative history to support the conclusion.

Have the dissenters considered the case of a doctor who sets aside an early morning hour to receive telephone calls directly from patients? Suppose this is done in the home with a special number and the doctor himself answering the telephone. If the caller is not dealing with the doctor in every meaningful sense, what causes the patient to pick up his prescription at the drug store? Mental telepathy? What about the salesman who places orders, or accepts orders, over the telephone for some commodity. Has he had no dealings with the order taker or giver? What about the bookie who accepts wagers over the telephone. Try to tell a winner that no dealing was involved. In none of the foregoing hypotheticals did a physical presence occur, yet no one can reasonably argue that a meaningful business transaction did not take place in the home office. It is a simple fact of life that to some a telephone is the lifeblood of their business.

What will the dissenters do when the age of video-telephone or closed-circuit television is fully upon us? Such transmission comes over a wire just as today's everyday telephone conversation. Do we get one result when we talk to someone over a telephone wire and another result when we see their picture over a wire? Is one "dealing" and one not?

It is contended that the use requirement is not met because

the customer, client, or patient is not using the taxpayer's facility when he merely telephones the taxpayer at his home office. Patently it takes two to make a telephone call, video or otherwise; one end is of no value without the other. I submit that we should not engage in quibbling.

One dissent sounds a particularly sour note, implying that the effect of the decision is to permit a deduction for every doctor or salesman who answers a telephone at night. A red herring, I submit. The threshold requirement of exclusivity—the taxpayer's difficult burden—should eliminate any concern that such gross abuse will succeed.

To suggest that the patient, customer, or client must appear personally on the scene to talk to the taxpayer or his nurse or his secretary is not to protect the integrity of the statutory scheme to eliminate home-office abuse, but rather is to add, judicially, a new requirement of personal appearance. It defies reality.

FAY, WILES, and KÖRNER, *JJ.*, agree with this concurring opinion.

SCOTT, *J.*, dissenting: I respectfully disagree with the interpretation the majority places on the provisions of section 280A, I.R.C. 1954. That section, insofar as here relevant, provides that the expense of a home office is deductible only if the home office is "a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer." The facts in this case show that no patients, clients, or customers came to petitioner's home office for any purpose. They called petitioner on the telephone which was located in his home office. In my view, when a person calls a telephone number and talks to a person who answers, he does not "use" the room in which the telephone to which the call is made is located. The words "used by patients, clients, or customers in meeting or dealing with the taxpayer" envisions that the user be personally present in the home office. It may be that a patient, client, or customer could use the taxpayer's home office in "dealing" with the taxpayer without the taxpayer's being present in the office. If the taxpayer had a secretary, nurse, or agent in his home office to represent him, a patient,

client, or customer who came to the home office might deal with the taxpayer through that person. However, it is my view that in order for the patient, client, or customer to "use" a taxpayer's home office, the patient, client, or customer must be personally present in that office.

TANNENWALD, WILBUR, CHABOT, and PARKER, *JJ.*, agree with this dissenting opinion.

WILBUR, *J.*, dissenting. For the reasons set out hereafter, I respectfully dissent from the reading of section 280A that the majority has provided.

Section 280A limits the deductions for expenses of an office in the home for taxable years beginning after December 31, 1975.[1] Section 280A(a) provides generally that "no deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."[2] Section 280A(c)(1), as recently amended, sets forth an exception to this general disallowance[3] by providing that:

(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) [as] the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

Congress enacted section 280A to provide "definitive rules relating to deductions for expenses attributable to the business use of homes." S. Rept. 94–1236 (Conf.) (1976), 1976–3 C.B.

---

[1] Sec. 601, Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1569–1572.

[2] Sec. 280A(b) provides that "subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity)."

[3] Other exceptions to the general disallowance provision of sec. 280A(a) are set forth in sec. 280A(c)(2), (3), and (4).

(Vol. 3) 807, 839. Also see H. Rept. 94–658 (1976), 1976–3 C.B. (Vol. 2) 695, 852; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 185; Joint Comm. Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 151. Prior to the enactment of section 280A, we employed an "appropriate and helpful" standard in determining whether a home-office deduction was proper.[4] Congress, in specifically rejecting that standard, opted for a less "subjective determination" and set out clear rules in order to alleviate administrative burdens which it believed were inherent in such a standard. H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 852, S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185, and Joint Comm. Explanation, *supra*, 1976–3 C.B. (Vol. 2) at 151. Congressional dissatisfaction with the "appropriate and helpful" standard, however, was not limited to administrative problems; Congress also felt that such a standard would treat personal living expenses as ordinary and necessary business expenses.[5] H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 852; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185; Joint Comm. Explanation, *supra*, 1976–3 C.B. (Vol. 2) at 151.

Congress has seldom spoken with a clearer or more forceful remedial purpose. It was particularly concerned to disallow residential expenses where the dwelling was used *by the taxpayer* to finish up the day's work—to continue doing at home essentially what he did at the office. See H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 852; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185; *Bodzin v. Commissioner*, 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975), cert. denied 423 U.S.

---

[4]*Bodzin v. Commissioner*, 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975), cert. denied 423 U.S. 825 (1975), but see *Sharon v. Commissioner*, 66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979), in which we overruled *Bodzin*. See also H. Rept. 94–658 (1976), 1976–3 C.B. (Vol. 2) 695, 849–850; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 183; Joint Comm. Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 149, where *Bodzin* as well as other decisions of this Court are cited.

[5]"In many cases, the application of the appropriate and helpful test would appear to result in treating personal, living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home. Thus, expenses otherwise considered nondeductible personal, living, and family expenses might be converted into deductible business expenses simply because, under the facts of the particular case, it was appropriate and helpful to perform such portion of the taxpayer's business in his personal residence." (H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 852; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185.)

825 (1975). Thus section 280A(c)(1)(A) and (C) provides that use *by the taxpayer* affords a deduction only when the dwelling unit is the taxpayer's principal place of business, or a separate structure used in connection with the taxpayer's trade or business. Sandwiched directly between these two exceptions is the one before us that—in sharp contrast—requires use *by patients, clients, or customers.* In these three exceptions, Congress deliberately distinguished between use by the taxpayers and use by patients, clients, or customers.

In making use by patients, clients, or customers the focal point of the exception before us, Congress had something more in mind than some incoming phone calls. Congress obviously contemplated the practice of physicians, dentists, or other medical personnel who sometimes have a treatment facility in their home. And of course, the provision is not confined to medical services, but encompasses a wide variety of situations, including a barber or beautician providing services in an area of his home, or a businessman who sees customers at his home on a regular basis. But quite clearly, the statute contemplates the physical presence of the patient, client, or customer.

The majority seems to recognize this when it states:

No doubt the typical situation the drafters of section 280A(c)(1)(B) had in mind was the doctor, the dentist, or the lawyer who maintains a home office, in addition to his principal office, where he meets with patients or clients. The meeting-or-dealing provision for allowance, however, is not limited to professional persons * * *

I agree with the specific words of the majority that what Congress "had in mind was the doctor, the dentist, or the lawyer who maintains a home office * * * where he *meets* with patients or clients" (i.e., is physically present). Majority opinion at p. 434; emphasis added. Congress required no less when it included nonprofessionals of various kinds, even though it used the terms "dealing with" to describe these individuals.[6]

If the statute simply said used by patients, clients, or customers "in meeting with the taxpayer" (rather than "in

---

[6]I also agree with the implication of the majority that in including businessmen (as well as a professional who, in the words of the majority, "*meets* with patients or clients" (emphasis added)), Congress may well have selected "dealing with" as a more appropriate term to describe business relationships.

meeting *or dealing* with the taxpayer" (emphasis added), there could be no doubt that physical presence is required—the word "meet" unequivocally requires physical presence and is clearly not satisfied by telephone calls. While this was surely Congress' intention in using the words "*meeting* with the taxpayer," the majority tells us that the addition of the words "or dealing with the taxpayer" nullifies this intent, eliminating the need for physical presence. "Meeting," with its requirement of physical presence, becomes largely a superfluous word under this odd interpretation. I would avoid a construction that eliminates the need for physical presence that is clearly contemplated by the statute.

The majority's reading of the statute, enabling the exception to take a large bite out of the general rule, undermines the congressional goal in enacting section 280A. Congress enacted "definitive rules" in order to provide a "less subjective" determination. Clear rules, it was hoped, would alleviate administrative problems inherent in a subjective standard. Requiring that the dwelling be used *by individuals other than the taxpayer* (i.e., his patrons), provides a concrete standard objectively verifiable. For when patients, clients, or customers must deal with a doctor or dentist, a barber or beautician, or a lawyer or businessman at the latter's home office on a regular basis, there will be books and/or business records, and bills for services, reflecting the business usage.[7]

In contrast, all we have before us is the bare assertion of the taxpayer—whose employer provided an office and a secretary—that he received business phone calls at home in the evening. What businessman doesn't? Insurance salesmen and real estate brokers, home improvement contractors and television repairmen, physicians and clergymen—indeed, the majority of those in sales and services—regularly make and receive business calls at home. But we are here concerned not with telephone expenses, but home-office expenses.

The majority opinion does belatedly recognize that the central requirement of the exception is use "by patients,

---

[7]And these records will reflect "the gross income derived from such use" for purposes of applying the limitation on deductions prescribed by sec. 280A(c)(5)(A). It is not clear how the majority will, in a case like this one, determine how much gross income was derived from the business use (i.e., telephone calls) involved.

clients, or customers in meeting or dealing with the taxpayer." Almost as an aside, near the end of the opinion (note 11), the majority relegates the central to the incidental:

The statute requires that the place of business be "used by * * * clients in meeting or dealing" with the taxpayer. The syntax here may suggest that it must be the clients who initiate the meeting or dealing. In the instant case, the telephone calls were nearly exclusively initiated by the clients; to make such calls, the callers in every real sense "used" both their telephones and petitioner's telephone and the office space in which he handled the calls. Petitioner would, therefore, qualify under a literal reading of this requirement. * * *

Here, the majority finally focuses on the critical words—"used by patients, clients, or customers." But Congress was surely not at all concerned with who initiates the business encounter, but the *nature* of the business encounter. Certainly there is no statutory requirement that "in meeting" with the taxpayer, the patients, clients, or customers initiate the meeting. Is client initiation important only in "dealing with" as opposed to "meeting with" the taxpayer, even though both words ("meeting" and "dealing") follow the words "used by patients, clients, or customers"? This emphasis on client initiation is entirely foreign and wholly unrelated to the structure of the statute and to any remedial purpose Congress had in mind in enacting it. It simply serves as the only ship the majority saw on the horizon for circumnavigating the requirement that the dwelling be "used by the patient, client, or customer."[8]

In the final analysis, one word in a statute, like one joist under a floor, can only carry so much weight before collapsing. That collapse comes here when the majority tells us that in making the client-initiated calls, "the callers in every real sense 'used' both their telephones and petitioner's telephone *and the office space in which he handled the call*." (Emphasis added.) Fictions are occasionally the raw material of the judicial process, and we should seldom be surprised at the

---

[8]The majority tells us the proposed regulations fail to state that such meetings must be in person. What other kinds of meetings are there? Prior to this case, it would have taken an imaginative draftsman to realize that the regulations should deal with telephone calls. The proposed regulation does require that the use of the dwelling by patients be "substantial and integral" to the taxpayer's business, concluding that "Occasional *meetings* are insufficient." If occasional meetings are insufficient, what does this imply about telephone calls? Certainly not what the majority suggests. (Sec. 1.280A-2(c), Proposed Income Tax Regs. Emphasis added.)

metaphysical products of legal literature. Nevertheless, it startles me (and no doubt the typical patient) to learn that "in every real sense" when I call my physician at home, I not only use my telephone but his, and not only his telephone, but the "space in which he handled the call," even though I have not the slightest notion where in his dwelling this transpired. And Congress is entitled to ask how did such a bizarre analysis result from a statute specifically designed to provide "definitive rules" producing a less "subjective determination," alleviating administrative burdens, and precluding the deduction of personal living expenses.

Judge Learned Hand once reminded us that "the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create." *Helvering v. Gregory*, 69 F.2d 809, 811 (2d Cir. 1934), affd. 293 U.S. 465 (1935). The word "dealing" is only one note in a carefully constructed melody. The majority has heard the note but not the melody.

TANNENWALD, SCOTT, SIMPSON, CHABOT, and PARKER, *JJ.*, agree with this dissenting opinion.

CHABOT, *J.*, dissenting: The majority hold that when a customer telephones the taxpayer, the customer is using the room in which the taxpayer answers the telephone. Respectfully, I dissent.

In enacting section 280A, I.R.C. 1954, the Congress sought to restrict the deductibility of "home office" expenses. In order to be allowed the deduction, the taxpayer is required by the Congress to meet a series of tests. One of these conjunctive tests is embodied in section 280A(c)(1)(B), that "a portion of the dwelling unit * * * is exclusively used on a regular basis—(B) as *a place of business which is used by patients, clients, or customers* in meeting or dealing with the taxpayer in the normal course of his trade or business." (Emphasis supplied.)

The majority's holding treats the statute as though subparagraph (B) read as follows:

(B) as *a place of business which is used by the taxpayer* in meeting or

dealing with patients, clients, or customers in the normal course of the taxpayer's trade or business * * *

One may agree with, or quarrel with, the policy of the majority's view of the statute, but that is not what the Congress wrote and enacted.

I do not believe the Congress thought that the use-by-the-taxpayer's-customer test could be satisfied merely by the taxpayer's receiving a telephone call. I do not believe the language of the statute or the legislative history suggests (much less requires) this result. I would not reach this result under section 280A as enacted by the Congress.

SCOTT, WILBUR, NIMS, and PARKER, *JJ.*, agree with this dissenting opinion.