GERALD H. STORZER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Storzer v. Commissioner
Docket No. 16678-79.
United States Tax Court
T.C. Memo 1982-328; 1982 Tax Ct. Memo LEXIS 416; 44 T.C.M. (CCH) 100; T.C.M. (RIA) 82328; June 14, 1982. Gerald H. Storzer, pro se. Barbara A. Matthews, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1977 of $535. Due to concessions, the issues remaining for decision are 1) whether petitioner is entitled to a home office deduction under section 280A [1] and 2) whether the denial of a home office deduction to college professors violates that class' rights to equal protection under the Constitution. FINDINGS OF FACT Petitioner Gerald H. Storzer resided at Brooklyn, New York, at the time the petition was filed in this case. During 1977, petitioner was employed at Brooklyn College of the City University of New York, Brooklyn, New York, as a non-tenured associate professor of French language and literature. During this time, petitioner generally taught classes at the college in Brooklyn three days *418 a week during the school year, usually teaching from 8 a.m. to 2 p.m. or 4 p.m., with breaks, on each of those days. During the summer of 1977, petitioner taught a translation workshop at the Graduate Center on 42nd Street in Manhattan from 9 a.m. to 12:30 p.m., daily. Along with petitioner's classroom duties, petitioner's position required him to perform the following duties: prepare lectures, prepare and grade exams, develop new curricula, perform committee work and community service, maintain at least three "office" hours a week to meet with students and research and publish scholarly articles. [2]
Brooklyn College supplied petitioner with an on-campus staff room in which to perform his non-classroom duties. This staff room consisted of approximately 157 square feet of floor space, into which were crammed five or six desks to be shared by seven professors. The room had one telephone shared by 35 people. *419 No typewriter was kept in the room due to security problems. Likewise, due to the easy availability of keys to the room and the desks in the room, no professor kept valuable articles of clothing or books in the room. Other professors occasionally met with students in the room, but none engaged in serious research or writing or class preparation in the room. The staff room was available for petitioner's use between the hours of 8 a.m. and 10 p.m., Monday through Thursday, and between 8 a.m. and 5 p.m. on Fridays. Due to a number of reported assaults on faculty members, the Chairman of the Department of Modern Languages and Literatures advised his staff in January, 1977, that they would be wise not to use the staff room at all on evenings and weekends when classes were not in session. Brooklyn College did not provide petitioner with a carrel or other space in its library to perform research. A home office was not an explicit requirement of petitioner's employment contract with Brooklyn College. Petitioner did not significantly use the staff room for his non-classroom activities. When petitioner met with students he generally did so in the college faculty cafeteria. His *420 remaining non-classroom duties were all performed at his home offices. From January 1, 1977, to July 31, 1977, petitioner lived in a three-room apartment on Flatbush Avenue, Brooklyn, New York. From August 1, 1977, to December 31, 1977, petitioner lived in a three-room apartment on 23rd Street in Manhattan. Petitioner used the living rooms of these apartments as his living quarters -- containing his bed, television, etc. Petitioner used the bedrooms of these apartments exclusively as home offices. Petitioner kept his library, a desk, a typewriter and other research tools in these bedrooms. Portions of the bedroom closets in the apartments were used by petitioner for storage of books and supplies related to his profession. During 1977, petitioner researched and eventually published five scholarly articles in his field. All the work on such articles was performed at petitioner's home offices. Such work resulted, in part at least, in petitioner's receiving tenure in 1978. The five articles which petitioner wrote at his home offices and published in 1977 were: "Codes and Structure in Gide's Les Faux Monnayeurs." "Topology of the Absurd Psyche: Landscape in L'Etranger. *421 " "Abstraction and Orphanhood in the Novels of Mongo Beti." "Narrative Techniques and Social Realities in Oyono's Une vie de boy and Le Vieux Negre at la Medialle."
An article on Balzac, Gide and Genet. Each paper required an average of 200 to 300 hours of work. All of the work was performed on weekends or on vacation periods, occasionally in the evening, and always in petitioner's home offices. On his 1977 income tax return, petitioner deducted $1,813.51 for an office in the home. In his statutory notice of deficiency, respondent totally disallowed this deduction, but respondent now concedes that petitioner is entitled to deduct $40.72 for business telephone calls and $18.02 for supplies. Both parties have agreed that if it is determined that petitioner is entitled to a home office deduction, the amount of that deduction should be limited to $1,417.40. OPINION The first issue for decision is whether section 280A prohibits petitioner from obtaining a home office deduction in 1977. Petitioner makes no argument that he falls within the provisions of section 280A(c)(1)(B) or 280A(c)(1)(C). Rather, petitioner argues that he is entitled to a home office *422 deduction under the terms of section 280A(c)(1)(A), which provides that a taxpayer is entitled to a home office deduction if he uses such office exclusively and regularly as his principal place of business and his use is for the convenience of his employer. Respondent, on the other hand, argues that petitioner has not shown either 1) that the home office was maintained for the convenience of Brooklyn College, 2) that petitioner's home offices were his principal places of his business as a professor or 3) that petitioner's use of his home offices for business purposes was exclusive. We think the respondent has conceded the exclusive use argument both by his stipulation and his assurances to this Court at trial that "there was no dispute about the fact that he used parts of his residence exclusively for this work;" and we so hold. However, in regard to the argument that petitioner has not shown that his home offices were his principal places of business, we agree with respondent. Petitioner was an associate professor in 1977 and makes no argument that he was engaged in any other trade or business during that year. [3] In determining a taxpayer's principal place of business *423 within the meaning of section 280A(c)(1)(A), the Court must ascertain the "focal point" of the taxpayer's business activities. Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. 105, 109 (1980). The focal point of a professor's activities would normally be the college where he teaches. While preparation of lectures, grading of papers and exams and professional activities, including research and publishing, are important and indeed essential to the work of a college professor, they do not, in the last analysis, shift the focal point of the professor's activities from the physical location of the college to the office in his home. [4] Such is true even when, as petitioner contends, he spends more time each week pursuing his occupation in his home office than he does at his college. [5]
Consequently, *424 we must hold that section 280A prohibits petitioner's deduction of his 1977 home office expenses. [6]
The second issue presented is whether Congress' failure to grant a home office deduction to professors such as petitioner is a violation of equal protection under the Due Process Clause of the 5th Amendment to the Constitution. [7] Necessary to any equal protection argument is the identification of a class of persons invidiously discriminated against. In the instant case, petitioner argues that professors are deprived of a benefit (a deduction for maintaining an office) of which other citizens are not. We see no merit to this argument. Section 280A applies equally to disallow home office deductions under certain circumstances to hotdog stand operators ( Baie v. Commissioner,supra), to real estate sales people ( Jackson v. Commissioner,supra), to lawyers ( Roth v. Commissioner,T.C. Memo. 1981-699) and to cancer *425 researchers ( Aab v. Commissioner,T.C. Memo. 1981-620). The law treats professors no differently than it treats all other citizens who maintain offices in their residences. Accordingly, petitioner's constitutional argument must fail. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year at issue.↩
2. Petitioner's research and publishing activities were required not only so that petitioner could retain his job and eventually achieve tenure (a personal reason), but also to enhance the prestige of Brooklyn College so it could continue to attract high caliber students.↩
3. Compare Sessions v. Commissioner,T.C. Memo. 1981-319↩, where a professor argued that he was also engaged in the separate trade or business of publishing. 4. See Weightman v. Commissioner,T.C. Memo. 1981-301↩. 5. See Strasser v. Commissioner,T.C. Memo. 1981-523↩.
6. Since petitioner has not shown his home offices to be his principal places of business, we need not reach the question whether petitioner maintained his home offices for the convenience of his employer.↩
7. Petitioner raises his equal protection argument under the 14th Amendment, which applies only to the states and has no application to Federal tax laws. Hamilton v. Commissioner,68 T.C. 603, 606 (1977). Since petitioner is a pro se litigant we have taken the liberty of recharacterizing his argument as falling under the equal protection component of the Due Process Clause of the 5th Amendment↩. Respondent is not prejudiced by this action since he has anticipated this recharacterization in his reply brief.