W. MICHAEL MATHES and KAREN L. MATHES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mathes v. Commissioner
Docket No. 42597-86
United States Tax Court
T.C. Memo 1990-483; 1990 Tax Ct. Memo LEXIS 538; 60 T.C.M. (CCH) 704; T.C.M. (RIA) 90483; September 10, 1990, Filed *538 Decision will be entered under Rule 155. Curtis W. Berner, for the petitioners. James W. Clark, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes for 1982 and 1983 in the amounts of $ 21,708 and $ 14,754, respectively. The issue for decision is whether petitioners are entitled to claimed home office and employee business expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. W. Michael Mathes (petitioner) and Karen Mathes, husband and wife, resided in Sonoma, California, at the time their petition was filed. Petitioner, a history professor, has been employed continuously by the University of San Francisco (the University) since 1966; he was granted tenure in 1973. His field of specialization was (and is) colonial Mexican history, particularly the Spanish influence on the development of the northwestern part of Mexico and the southwestern part of the United States. Throughout the years in issue, petitioners lived in Sonoma, which is approximately 50 miles, *539 or a one-hour drive, from San Francisco. Petitioner taught at the University on Tuesdays and Thursdays. He had four classes, each of which met for approximately one and one-half hours once a week. Including class time, he spent approximately 25 hours per week at the University. In addition to the time devoted to teaching, petitioner spent a substantial number of hours each week pursuing research and writing in his field of specialization. In this regard, approximately 55 percent of his time was spent working at his home, 15 percent outside of his home and in the Bay area, and 30 percent outside the Bay area. Petitioner enjoyed an excellent reputation as one of the top researchers at the University. (The University is not as research oriented as some other universities, but all professors are required to perform research.) Petitioner's research, writing, and speaking activities bolstered the academic reputation of the University. During 1982, petitioner authored one book, coauthored two books, wrote six articles, translated a portion of a work, reviewed a book, and wrote the prologue to a book. During 1983, he wrote six articles and a monograph, translated a work, and reviewed *540 a book . The publications typically acknowledged petitioner's affiliation with the University. Although petitioner began publishing in 1960, he did not do so in the hope of receiving royalties; the only royalties he received were from one publication in 1973 in the amount of $ 800. The market for the publications he produced is relatively limited. Typically, 1,500 copies or fewer of each publication are printed. The purchasers consist primarily of libraries and scholars. In addition to his written work, petitioner made oral presentations. During 1982, he presented two papers in La Paz, Mexico, one paper in Santa Cruz, California, and four lectures. During 1983, he presented three papers in La Paz, Mexico, one paper in San Diego, California, and two lectures. He received nominal remuneration for these presentations which rarely, if ever, exceeded his expenses and sometimes was insufficient to cover his costs. The University has a large library (the Richard Gleeson Library) on campus. Petitioner had access to the materials not only at the Richard Gleeson Library but also at the Bancroft Library (located on the campus of the University of California-Berkley) and the Sutro Library *541 (the California State Library located in San Francisco). Petitioner traveled to these libraries regularly. The Richard Gleeson Library had copying machines, microfilm printer-readers, and word processing equipment which were available to professors and students alike. (In addition, professors at the University have access to typewriters, dictating equipment, and secretarial assistance.) The University provided petitioner with an office on campus. The faculty offices at the University were originally designed as student activity and study rooms. While petitioner's office was sufficient in size to perform some research, as well as administrative work (such as the grading of exams), it could not accommodate the extensive collection of materials he used in his work. Had petitioner requested additional space at the University, he would not have been able to obtain it. Petitioner established an office in his house because of the limited office space and other shortcomings that he perceived to exist with the University facilities. He designed, constructed, and used his home office exclusively for his research and writing activities. Petitioner's home office occupied 28 percent (approximately *542 450 square feet) of the floor space of the house. He depreciated 28 percent of the cost of the house on a straight-line basis over 30 years, which equaled $ 426 per year. Petitioner consistently followed this method of computing his home office deduction since the early 1970's. During 1982 and 1983, petitioner's home office housed a library which contained 18,000 to 19,000 volumes, all of which related to Mexican colonial history. The Bancroft Library, which he felt had a fine collection of materials in his area of specialization, duplicates approximately 50 percent of the publications in his personal library. The Sutro Library contains approximately 20 percent of the volumes in petitioner's personal library. The collections of the Bancroft and Sutro Libraries are not entirely complementary. Although many of the volumes in petitioner's library were available in the Bay area, some of the volumes were not generally available. He considered his library volumes necessary for his research and writing activities. Several of petitioner's colleagues had libraries the size of his. Petitioner depreciated his books over ten years. Petitioner purchased his own copying machine to increase *543 his efficiency. The machines at the University did not always work and frequently there were long waiting times to use the copiers. Petitioner used his copying machine almost exclusively in his research work. Because he frequently used microfilm of historical foreign documents and needed access to a microfilm printer-reader at various times when the libraries were closed, petitioner purchased four of his own microfilm readers and four microfilming cameras. He either borrowed the microfilm or purchased it. Petitioner also purchased his own word processor and various other equipment. He depreciated all of his equipment over five years. Petitioner claimed deductions for telephone expenses of approximately $ 100 per month. He used his telephone to obtain information relevant to his research and to confirm speaking engagements. He rarely called the University. For 1982, petitioners reported total income in the amount of $ 95,663 (only $ 35,780 [1] of which was petitioner's salary from the University) and claimed a miscellaneous deduction on Schedule A of their return in the amount of $ 51,285 for library, office, mileage, research equipment, etc. expenses (hereinafter referred to as *544 the employee business expenses). Respondent allowed $ 2,234 of the claimed employee business expenses ($ 1,685 for mileage and $ 549 as telephone expenses); the balance of the claimed expenses was disallowed on the grounds that such were not ordinary and necessary business expenses except for $ 1,503 for mileage which was disallowed on the grounds that such was reimbursable. For 1983, petitioners reported total income in the amount of $ 76,299 (only $ 40,257 of which was petitioner's salary from the University) and claimed a miscellaneous deduction on Schedule A of their return for employee business expenses in the amount of $ 40,269. Respondent allowed $ 1,613 (for mileage) of the claimed deduction and disallowed the balance. The following is an itemization of petitioner's 1982 and 1983 employee business expenses: [2] *545 ITEM
1982
1983
library & microfilm depreciation
$ 16,732
$ 18,233
home office space
426
426
maintenance & utilities
2,041
2,118
research equipment depreciation
8,223
6,845
supplies, research materials,
teaching aids, film & book
restoration, etc.
[3] 12,562
2,228
travel for research, lecturing &
professional meetings outside
the San Francisco area: airfare,
meals, lodging, car rental & tolls [4]
7,679
6,831
local meals [5]
760
525
local tolls & parking
94
194
books donated for review to
professional journals [6] *546 73
---
charitable contributions [7]
1,662
452 (Petitioners have cancelled checks, receipts or similar documentation verifying substantially all of their expenditures.) In addition, petitioner claimed local mileage (from his home in Sonoma to various libraries in the Bay area) of 11,740 miles in 1982 and 10,056 miles in 1983, as well as mileage outside the Bay area of 4,872 miles in 1982 and 3,975 miles in 1983. Petitioner miscalculated his total mileage in 1982 as 16,702 miles (rather than 16,612) and claimed *547 a mileage expense deduction of $ 2,737. Respondent determined that the correct amount, if all the mileage for 1982 were allowable, based upon 16,702 miles, would be $ 3,188 (15,000 miles X $ .20 plus 1,702 miles X $ .11). For 1983, petitioner claimed a deduction of $ 2,876, based on 14,031 miles at $ .20-1/2 per mile. Petitioner maintained a contemporaneous log of his mileage. None of the travel claimed by petitioner related to his traveling to and from the University to conduct classes. The faculty agreement [8] *548 provided for reimbursement of certain travel expenses; however, the University's budget in 1982 and 1983 was insufficient to pay or reimburse petitioner for his travel expenses. Petitioner did not request funds for his travel, believing that if he had requested reimbursement he would not have been able to receive it. For the period 1978 through 1986, petitioner reported $ 325,908 as income from his employment at the University; for this same period, he claimed employee business expenses aggregating $ 308,547. OPINION A. Home Office Space, Maintenance and Utilities. On both his 1982 and 1983 income tax returns, petitioner claimed a depreciation deduction of $ 426 for home office space. He also deducted $ 2,041 for 1982 and $ 2,118 for 1983 as maintenance and utilities expenses for the home office. Section 280A(a)[9] provides a general rule that no deduction shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable years as his residence. Petitioner relies upon an exception (found in section 280A(c)(1)(A)) to the general rule of nondeductibility, which provides that subsection (a) does not apply to "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis [as] the principal place of business for any trade or business of the taxpayer." However, in the case of an employee, such as *549 petitioner, the exception applies " only if the exclusive use * * * is for the convenience of his employer." Sec. 280A(c)(1) . Petitioner contends that his home office should be considered his principal place of business because the University did not provide him with adequate space or adequate resources to conduct his research, which he says is an important part of his duties as a professor . Respondent maintains that petitioner is not entitled to the claimed deductions for home office expenses because the home office was not the "focal point" of petitioner's activities, and also because petitioner has not shown that the home office was maintained for the convenience of the University. A taxpayer may have only one principal place of business for each business in which he is engaged. Curphey v. Commissioner, 73 T.C. 766, 775-776 (1980). In determining the principal place of business, we formerly looked to the "focal point" of the taxpayer's business activity. Jackson v. Commissioner, 76 T.C. 696, 700 (1981); *550 Baie v. Commissioner, 74 T.C. 105, 109 (1980). However, we recently reconsidered and abandoned the "focal point" test in Soliman v. Commissioner, 94 T.C. 20 (1990). (Although the briefs filed in this case discuss at length the applicability of the "focal point" test, we think it unnecessary to reach the issue of whether petitioner's home office qualifies as his principal place of business under the new test enunciated in Soliman because petitioner has failed to show that his home office was maintained for the convenience of his employer.) In the case of an employee, such as petitioner, section 280A(c)(1) applies only if the home office is maintained "for the convenience of his employer." Such use has been found where the employee must maintain the office as a condition of his employment, Green v. Commissioner, 78 T.C. 428, 430 (1982), revd. on other grounds 707 F.2d 404 (9th Cir. 1983), or when the home office was necessary for the functioning of the employer's business or to allow the employee to perform his duties properly. See Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984). A deduction is not allowed where the home office is maintained purely for the personal convenience, *551 comfort, or economy of the employee. See Sharon v. Commissioner, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978). In the instant case, petitioner has not convinced us that he maintained his office for the convenience of his employer. The University did not require him to maintain a home office as a condition of employment, nor did he have to maintain the home office in order to perform his duties as a professor. The University provided him with an office on campus and, although that office was small for the nature and extent of the research he chose to perform, he could have conducted his research at the University's library or at any of the libraries to which he had access. The University also provided petitioner with facilities for photocopying and word processing, and secretarial help. He chose not to utilize these facilities and services because he did not wish to "get in line" (petitioner's terminology). Thus, in our opinion, petitioner's home office was not for the convenience of his employer, but rather for his personal convenience. In enacting section 280A, Congress intended to substitute a more stringent standard to prevent the conversion of nondeductible *552 personal, living, and family expenses into deductible living expenses. S. Rept. No. 94-938, 1976-3 C.B. (Vol. 3) 49, 185; H. Rept. No. 94-658, 1976-3 C.B. (Vol. 2) 695, 852; Staff of Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 151. Since petitioner has failed to persuade us that he comes within the exception of section 280A(c)(1), we sustain respondent's disallowance of the claimed deduction for home office space for both 1982 and 1983. Respondent conceded, with respect to 1982, $ 549 of petitioner's claimed deduction of $ 1,098 for his telephone. Petitioner failed to present evidence sufficient to substantiate the business nature of the balance of his telephone expenses. Therefore, respondent's disallowance is sustained. The remainder of the maintenance and utilities deductions presumably relate to petitioner's home; therefore, respondent's disallowance of such deductions is also sustained.
B. Library and Microfilm Depreciation. Petitioner listed all of his employee business deductions, including deductions for library and microfilm depreciation, on an attachment to his returns. The library and microfilm depreciation deductions *553 were claimed as follows: "Library and microfilm for research, depreciated at 10 percent per annum: carryover 1973-1981 = $ 10,908.78: 1982 acquisitions = $ 58,234.80: Total depreciation = $ 16,732.26." On his 1983 return, petitioner followed the same format, listing a carryover from 1973-1982 of $ 16,840.30, acquisitions in 1983 of $ 13,931.26, and total depreciation of $ 18,233.43. It is unclear what petitioner meant by a "depreciation carryover." We assume that he meant the depreciation to be taken in the current year on the basis of books he acquired in previous taxable years . At any rate, we need not decide such. Respondent does not contest the fact that petitioner expended the stated amounts for the purchase of books. Rather, respondent claims that the claimed depreciation expenses were not reasonable in amount and, as such, are not ordinary and necessary business expenses which are deductible under section 162(a). Section 162(a) is not a carte blanche grant by the Government of the right to deduct all expenses which arguably are somewhat related to an income-producing activity, no matter how unreasonable in amount. Commissioner v. Lincoln Electric Co., 176 F.2d 815 (6th Cir. 1949). *554 "[T]he element of reasonableness is inherent in the phrase 'ordinary and necessary.' Clearly, it was not the intention of Congress to automatically allow as deductions operating expenses incurred or paid by the taxpayer in an unlimited amount." Commissioner v. Lincoln Electric Co., supra at 817; see also United States v. Haskel Engineering & Supply Company, 380 F.2d 786, 788-789 (9th Cir. 1967). Whether the amount of the deduction claimed is reasonable is determined under the facts and circumstances of each case. The burden of proving that such amounts are reasonable rests with petitioner. In determining whether the amount expended is reasonable, the amount of the expenditure has been compared with the benefit to be derived. Commissioner v. Flowers, 326 U.S. 465 (1946); see also Wassenaar v. Commissioner, 72 T.C. 1195, 1202 (1979). It strains our credulity to conclude that petitioner's claimed depreciation expenses in 1982 and 1983 of $ 16,732 and $ 18,233, respectively, bear any reasonable relationship to the income he reported in those years. An additional factor the courts have considered in deciding whether an expense is reasonable is whether another purpose is being served *555 by the expenditure. United States v. Haskel Engineering & Supply Company, supra. It appears that at least half of petitioner's expenditures for books were acquired for the purpose of fulfilling his personal desire to own a large personal library since the books were readily available at libraries which petitioner regularly used. Moreover, in order for petitioner to avail himself of his entire personal library during the year, he would have to refer to approximately 50 different books each day of that year. Given his teaching commitment, his extensive travel outside the Bay area, and his research at the Gleeson, Brancroft and Sutro Libraries, it seems unlikely that petitioner used a significant portion of his own library during either of the years at issue. Based upon the record as a whole, as well as the amount of income petitioner derived from being a professor, and the personal nature of the majority of his expenditures for his library, we find the claimed library depreciation deductions to be excessive. Under the circumstances herein, we find that petitioner is entitled to depreciation deductions of $ 7,156 for 1982 and $ 8,051 for 1983. C. Research Equipment Depreciation. Petitioner *556 claimed depreciation deductions for research equipment in the amounts of $ 8,223 for 1982 and $ 6,845 for 1983. In listing the deductions on the attachment to his 1983 return, petitioner stated: "Research equipment (word processor, electrostatic copier computer, shelving) w/1982 one-time deduction and balance at 20 percent per annum = $ 7,097.49. Research equipment depreciation carryover = $ 1,125.13." On the attachment to his 1983 return, petitioner listed the deduction as follows: "Research equipment carryover = $ 1,094.57 Research equipment (printer, interface, modem, furniture, shelving) - one time 1983 deduction and balance at 20 percent per annum = $ 5,750.03." Again, respondent does not contest that the expenditures were made; rather, he contends that petitioner's claimed deductions were not ordinary and necessary business expenses. Before addressing respondent's contention, we note that petitioner's computations are unclear. It appears from an exhibit presented at trial that the "one time" deductions to which petitioner refers are deductions pursuant to section 179 in the amount of $ 5,000 per year. Petitioner failed to prove that he has met the requirements of section *557 179. Therefore, we disallow $ 5,000 per year of petitioner's claimed section 179 deduction with respect to the research equipment. Section 167(a)(1) authorizes the deduction of a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business . (See also section 168.) The bulk of the research equipment which formed the basis of the depreciation deductions claimed by petitioner was duplicative of equipment which was available to him at the University. He purchased his own equipment to enable him to work at home rather than drive 50 miles to the University . Petitioner failed to prove that his research equipment served any business purpose. We conclude that the equipment was acquired for petitioner's personal convenience; thus, he is not entitled to the claimed depreciation deduction with respect to such equipment.
D. Supplies . Petitioner claimed a deduction of $ 12,562 for 1982 and $ 2,228 for 1983 for "supplies, research materials, teaching aids, film and book restoration, etc." A professional person may claim as deductions the cost of supplies used by him in the practice of his profession. Sec. 1.162-6, Income Tax Regs. Respondent contends that *558 the expenses for supplies were not ordinary and reasonable business expenses. Initially, we note that the 1982 deduction includes an expenditure of $ 9,000 incurred in connection with printing a book. Petitioner failed to present any evidence to establish that the printing of the book in 1982 had any connection with his employment at the University. Consequently, $ 9,000 of the claimed 1982 deduction is disallowed. The balance of the deductions are subject to the requirement that they be reasonable in amount. United States v. Haskel Engineering & Supply Company, supra; Commissioner v. Lincoln Electic Co., supra. Based upon our consideration of the entire record, we find that petitioner is entitled to deductions in the amounts of $ 1,069 for 1982 and $ 668 for 1983 for supplies. E. Local Mileage, Tolls, Parking and Meals. Petitioner claimed local mileage deductions based upon 11,740 miles driven in 1982 and 10,056 miles driven in 1983. He also claimed deductions for tolls and parking fees in the total amount of $ 94 for 1982 and $ 194 for 1983, as well as meals in 1982 and 1983 in the respective amounts of $ 760 and $ 525. The cost of travel between two places of employment is *559 deductible. Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). However, it is well settled that the costs of commuting between the taxpayer's residence and his place of employment are nondeductible personal expenses. Sections 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs.; Commissioner v. Flowers, supra at 470; Coombs v. Commissioner, 608 F.2d 1269 (9th Cir. 1979), affg. in part 67 T.C. 426 (1976). To deduct the cost of travel from a home office to another office or place of business, the taxpayer must establish that the home office is his "principal office." Wisconsin Psychiatric Services, Ltd. v. Commissioner, 76 T.C. 839, 849 (1981); Green v. Commissioner, 59 T.C. 456, 459 (1972). Since we have held that petitioner's home office was not his principal office, petitioner's claimed deductions of commuting costs are denied. With respect to his local meals, petitioner testified that such meals were either eaten alone or with library directors. Petitioner failed to prove the business purpose of these expenses; therefore, the claimed deductions are denied.
F. Deduction for Travel Outside the San Francisco Area. Petitioner claimed $ 7,679 and *560 $ 6,831, respectively, on his 1982 and 1983 returns for travel to conduct research, to present lectures, and to attend professional meetings. Again, respondent does not question that petitioner incurred the claimed travel expenses, but contends that the amounts were unreasonable. Section 162(a)(2) permits the deduction of traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business. Only such travel expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted. Sec. 1.162-2(a), Income Tax Regs.
In view of the facts and circumstances present in this case, we find that deductions of $ 2,304 for 1982 and $ 2,049 for 1983 are reasonable, and only such amounts are allowed. To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. Petitioner participated in a pension plan through the University whereby five percent of his compensation was treated as a salary reduction and was contributed to the plan. Therefore, the $ 35,780 reflects only 95 percent of his income from the University.↩
2. The itemized deduction totals do not coincide with the figures claimed by petitioner on Schedule A. Petitioner did not explain the discrepancy.
3. This amount includes $ 9,000 incurred in connection with printing a book.↩
4. Sometimes it was necessary for petitioner to travel to Mexico in connection with his research because of his need for certain materials. The travel expenses petitioner deducted on his 1982 and 1983 returns typically related to such research or to presentation of lectures or papers. He traveled tourist class, rented economy cars, and did not eat extravagant meals. Petitioner's wife seldom accompanied him on the trips and, when she did, he did not include her expenses as a deduction on the returns. The amount shown on an attachment to the return totals $ 8,563 for 1982 and $ 7,543 for 1983. However, it is unclear how these figures were determined and the discrepancy was not explained.↩
5. The meals were either petitioner's or those he shared with various library directors.↩
6. In calculating the total employee business expenses for 1982, petitioners did not include the $ 73 claimed for "books donated for review to professional journals" and no mention of such expense was made on brief. Petitioners are deemed to have conceded this amount.
7. The charitable contributions reflected in the table above were claimed by petitioners in the "miscellaneous" section of Schedule A, as were all of the above deductions. In addition to these deductions, petitioners claimed charitable contributions in 1982 and 1983 in the respective amounts of $ 1,957 and $ 752 in the "contributions" section of Schedule A. On brief, petitioners calculated the total employee business expenses as shown on the returns (i.e., $ 51,285 in 1982 and $ 40,269 in 1983) without including the charitable contributions. No mention of such contributions was made on brief. Therefore, petitioners are deemed to have conceded these amounts.↩
8. The faculty agreement stated: "Within budgetary limitations, the University will pay (1) travel expenses of Association members when they travel voluntarily on official University business, (2) the transportation and limited per diem expenses by Association members invited to present papers at meetings of learned societies, and (3) one-half the transportation expenses of Association members who attend meetings of learned societies but do not deliver papers." 9. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩