ALBERT J. WEDEMEYER & DONNA L. KRAUS, f.k.a. DONNA L. WEDEMEYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wedemeyer v. Commissioner
Docket No. 28462-88
United States Tax Court
T.C. Memo 1990-324; 1990 Tax Ct. Memo LEXIS 341; 59 T.C.M. (CCH) 1022; T.C.M. (RIA) 90324; June 27, 1990, Filed *341 Decision will be entered under Rule 155. Albert J. Wedemeyer, pro se. Janice D. Newell, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) of the Code and Rules 180, 181, and 182. [1] Respondent determined a deficiency in income tax for the taxable year 1983 in the amount of $ 1,786, plus additions to tax pursuant to section 6651(a)(1) in the amount of $ 1,102, [2]section 6653(a)(1) in the amount of $ 220, and section 6653(a)(2) in the amount of 50 percent of the interest due on $ 1,786. The issues presented for our consideration are: 1) whether the statute of limitations bars assessment and collection of the deficiency and additions to tax for the taxable year 1983; 2) whether this Court has jurisdiction over Albert J. Wedemeyer; 3) whether petitioners are entitled to various expenses claimed on their Schedule C for the taxable year 1983; 4) whether petitioners are liable for the addition *342 to tax for delinquency for the taxable year 1983; and 5) whether petitioners are liable for the additions to tax for negligence under the provisions of sections 6653(a)(1) and 6653(a)(2). For convenience, we have combined our findings of fact and opinion on an issue by issue basis. The parties filed a stipulation of facts, which together with the attached exhibits is incorporated by this reference. Petitioners, now divorced, resided in California at the time their petition was filed. References to "petitioner" in the singular refer to Albert J. Wedemeyer. Issue 1. Statute of limitations. Petitioner prepared the couple's 1983 Federal income tax return. On April 16, 1984, *343 [3] petitioner proceeded late in the evening to a post office. From his car, he handed the envelope containing the tax return to a post office employee standing outside and collecting the returns. Petitioner had placed one first class stamp on the envelope. Petitioner stated that he was assured by the post office employee that there was sufficient postage on the envelope and that it would be timely postmarked. Although postmarked timely, one stamp was not, unfortunately, sufficient postage. The envelope was stamped "return to sender" and a section of that stamp marked "refused" was checked. However, there was no return address on the envelope, and it remained at the post office dead letter office for a period of time. Eventually, the envelope was opened and petitioners' address on the tax return, a post office box, was observed. A notice was placed in petitioners' post office box for postage due, which petitioner refused to pay for the reason that the mail might have been "junk mail." The envelope was again returned to the dead letter office. On July 7, 1984, the post office mailed the envelope to petitioners at their post office box. Petitioner thus became aware that his return *344 had not been filed. At some subsequent date, petitioner carried his return to the Santa Ana office of respondent and handed the return to a man named Guns. Petitioner stated that he requested a receipt for the return from Guns, but was refused. Petitioner does not remember the date this occurred. Petitioners' 1983 return bears a stamp "Received August 14, 1985, Laguna Niguel District, Santa Ana, California." The notice of deficiency herein was sent to petitioners on August 3, 1988. Petitioner first argues that the return for 1983 was timely filed inasmuch as the original envelope was postmarked April 16, 1984. Further, petitioner argues that the word "refused" on the envelope in which the return was originally mailed indicates that the envelope was delivered to respondent, and that respondent refused to accept the envelope because of insufficient postage. Finally, petitioner argues that, in any event, he filed the return substantially prior to August 14, 1985, and he should not be bound by the "Received" stamp appearing *345 on the return. Section 7502(a) provides generally, that if the requirements of that section are met, a document shall be deemed to be filed on the date of the United States postmark stamped on the cover in which such document was mailed. Section 301.7502-1(a), Proced. & Admin. Regs. However, section 7502 is not applicable unless the document is mailed in accordance with the requirements set forth in the regulations. One of those requirements is that the document must be deposited within the prescribed time in the mail in the United States with sufficient postage prepaid. Section 301.7502-1(c)(1)(ii), Proced. & Admin. Regs. Because petitioner did not affix sufficient postage to the envelope, he is therefore not entitled to the presumption of filing afforded by section 7502. It is irrelevant that the amount of postage due was only 17 cents, or that a postal employee assured him that adequate postage had been affixed thereto. We also hold that petitioner has not established that the envelope was in fact delivered to respondent, nor that respondent stamped the word "refused" on the envelope. This stamp would appear to be part of the standard post office procedure, and no contrary *346 evidence was submitted. Finally, we hold that petitioner has not established that the date on which the return was filed was not August 14, 1985. In order to claim the benefits of the statute of limitations, it is petitioner's burden to prove the date upon which the return was filed. Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735 (1972). The date stamped upon the return by respondent is presumptively correct and petitioner must overcome that presumption with satisfactory evidence. Petitioner has not satisfied that burden by contending that an employee of respondent, to whom he handed the return on some unspecifieddate, refused to give him a receipt. There are several ways petitioner might have established a filing date. Petitioner could have sent the return by registered or certified mail. The Court notes that respondent has a procedure whereby certain employees of respondent have authority to stamp a duplicate copy of the return with a received stamp, which petitioner could then use to demonstrate a particular filing date. Petitioner could also have called Mr. Guns (if he exists) as a witness. None of these procedures *347 were followed. Indeed, petitioner does not know the day on which he believed he filed the return. He only states that it was prior to August 14, 1985. On these facts, we hold therefore, that petitioner's return was filed on August 14, 1985, and that the notice of deficiency was mailed within three years of the filing of that return. Petitioner's claim that the statute of limitations has expired is rejected. Issue 2. Jurisdiction. Duplicate originals of the notice of deficiency were mailed to two separate addresses: 933 Pepper, #4, El Segundo, CA 90245, and 2377 West Broadway, Anaheim, CA 92804. The former address was that of petitioner Donna L. Kraus, formerly Donna L. Wedemeyer, and was timely received by her. The notice of deficiency mailed to the latter address was returned to the Internal Revenue Service with a notice of a forwarding address and that the forwarding time had expired. Petitioner did not receive a copy of the notice of deficiency from respondent, but did receive a copy of the notice of deficiency from his former wife. The petition was filed within 90 days from the mailing of the notice of deficiency. The notice of deficiency was attached to the petition, *348 which consisted of six pages prepared by petitioner wherein he attempted to comprehensively detail all of the facts and issues that petitioners are raising herein. The mailing of a deficiency notice, which is not addressed to the taxpayer's last known address, may nevertheless result in our acquisition of jurisdiction. It has been held that an incorrectly addressed notice results in our jurisdiction when a taxpayer receives "actual notice [of the contents of the deficiency notice] without prejudicial delay." Clodfelter v. Commissioner, 527 F.2d 754, 757 (9th Cir. 1975), affg. 57 T.C. 102 (1971); see also McKay v. Commissioner, 886 F.2d 1237, 1238-1239 (9th Cir. 1989), affg. 89 T.C. 1063 (1987). Section 6212(b) provides that respondent's obligation to give notice of his determination is satisfied if he mails the notice of deficiency by certified mail to the taxpayer's last known address. By providing the safe harbor of section 6212(b), Congress did not intend to invalidate actual, rather than constructive methods, of communicating respondent's determination. Actual notice is the central goal of this section. McKay v. Commissioner, supra at 1238-1239. It has also been held that *349 timely filing of a petition waives any objections to the defects in the address or mailing of the notice of deficiency. Mulvania v. Commissioner, 769 F.2d 1376, 1379-1380 (9th Cir. 1985), affg. a Memorandum Opinion of this Court. We hold that petitioner received actual notice of respondent's determination from his former wife and such receipt of actual notice did not prejudice petitioner. Miller v. Commissioner, 94 T.C. (1990). A comprehensive petition was timely filed with the Court, signed by both petitioners. We hold that we properly have jurisdiction over petitioner. (It has never been contended that we lack jurisdiction over Donna Kraus.) Issue 3. Schedule C expenses. Prior to 1983, petitioner was proprietor of several convenience food stores known as Pomp and Pantry Food Stores. During 1982 petitioner was winding up this business and, by the end of 1982, was no longer so engaged. Sometime in February 1983, petitioner became involved with Amway. Petitioner maintained that involvement from February to October 1983. In November 1983, petitioner switched from Amway to Yurika Food Distribution Company. The Court understands that both of these entities are involved with *350 the distribution of household or food products, using a system that does not involve retail stores. In addition, in March 1983, petitioner began to work as a zone manager for Tic Toc Systems, Inc. (Tic Toc), a division of Fairmont. His duties required that he travel between six to eight U-Tote-Em grocery stores, supervising all aspects of the operations of those stores. Tic Toc provided a car and gasoline. Petitioner worked for Tic Toc for the balance of the year 1983. Petitioner filed a Schedule C, which did not identify a main business activity, product, or business name and address. The parties have stipulated that the "Schedule C relates to petitioner's participation in an Amway distributorship." That Schedule C reported gross income of $ 191.37 and the following expenses: Depreciation
$ 1,315.77
Dues & publications
56.50
Interest on business
indebtedness
334.89
Office expense
5,282.47
Supplies
307.91
Travel & entertainment
888.54
Educational
606.88
In the notice of deficiency, respondent disallowed the depreciation, interest on business indebtedness, office expense, travel and entertainment to the extent of $ 819, and educational expense in the amount of $ 425. a. The depreciation expense *351 pertains to a vehicle referred to as a Champ, which petitioner purchased in October 1982, allegedly for $ 5,263.06, and for which he claimed a depreciation deduction for 1983 under ACRS of 25 percent of his cost or $ 1,315.77. The Champ was purchased as a "company car" in connection with petitioner's Pomp and Pantry Food Stores. In 1983, petitioner used the Champ for various purposes. There still may have been some winding down of the Pomp and Pantry operation, as petitioner testified to trips back and forth to attorneys that were involved with a bankruptcy proceeding. He was also attempting to look for other business interests at that time. After petitioner was hired by Tic Toc, he used a Tic Toc car. Petitioner claims 100 percent use of the Champ in 1983 for business purposes. However, petitioner did not maintain any records showing the use of the car, destinations traveled, or mileage incurred. His self-serving, uncorroborated testimony is not satisfactory proof. Accordingly, petitioner has not satisfied his burden of proof and is not entitled to any depreciation. [4] *352 b. The interest expense disallowed pertains to interest paid with respect to the financing of the Champ. Since petitioner has not shown the extent of his business use of the Champ, he may not deduct any interest as a business expense. Respondent concedes that the interest is deductible as a Schedule A deduction. Unfortunately, petitioner did not itemize his deductions in 1983, but utilized the tax table to calculate his tax liability. Accordingly, we cannot allow any deduction for petitioner with regard to this item. c. The deduction for office expense of $ 5,282.47 is a deduction for home office expense. For the first four months of 1983, petitioner lived on Redwood Avenue. The apartment consisted of 2,024 sq. ft., including a garage of 360 sq. ft., a living room of 320 sq. ft., and an office of 99 sq. ft. The garage, living room, and office comprised of 38-1/2 percent of the total square footage available. In May 1983, petitioner moved to Broadway, where the apartment consisted of 1,710 sq. ft., including a garage of 336 sq. ft., a living room of 168 sq. ft., and an office of 120 sq. ft. The garage, living room, *353 and office comprised of 36-1/2 percent of the total square footage area. Petitioners' deduction for home office consists of 38-1/2 percent of the Redwood expenses, and 36-1/2 percent of the Broadway expenses, consisting of rent, gas, water, and telephone. Respondent believed that the claimed expenses were related to petitioner's Amway and Yurika activities. However, at trial, petitioner claimed that the home office expense was erroneously claimed on Schedule C and should have been claimed as an employee business expense in connection with his employment with Tic Toc. [5] At trial, petitioner also claimed that he used his living room (in one or both residences) in connection with an alleged business activity of acting. The garage was used to house the Champ. Section 280A(a), in general, provides that no deduction is allowed with respect to the business use of a taxpayer's personal residence. Section 280A(c) contains some limited and explicit exceptions to this rule which *354 are, in part, as follows: (c) Exceptions for certain business or rental use; limitations on deductions for such use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.
In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. Therefore, for a deduction to be allowed under section 280A(c)(1), the taxpayer must establish that a portion of his dwelling unit is: 1) exclusively used, 2) on a regular basis, 3) for the purposes enumerated in subparagraphs (A),(B), or (C) of section 280A(c)(1), and 4) if the taxpayer is an employee, the office is maintained for the *355 convenience of the employer. Moreover, deductions allowed under section 280A(c)(1) may not exceed the excess of the gross income derived from such use over the deductions allocable to such use which are allowable regardless of the usage (such as interest and taxes). See section 280A(c)(5). No evidence was presented with regard to the use of the garage. Petitioner has not maintained records with regard to the use, business or personal, of any vehicle(s) that may have been stored in the garage. Any personal use of a vehicle kept in the garage (including a company car) would require a finding that the exclusivity requirement was not satisfied and no deduction would be allowed. Therefore, we are unable to find that petitioner used the garage in 1983 exclusively for business purposes. Petitioner used the space designated "office space" both as an employee and in connection with his Amway/Yurika activities. We have recently held that where a taxpayer regularly uses his home office in connection with more than one business or activity, section 280A(c)(1) may apply, provided that each business use is of the type enumerated in section 280A(c)(1), and the home office is used exclusively *356 in connection with those businesses. If the use of the home office for either activity cannot satisfy section 280A(c)(1), then petitioner cannot satisfy the exclusive use requirement of section 280A(c)(1) and the general nondeductibility rule of section 280A(a) would govern. See Hamacher v. Commissioner, 94 T.C. (1990). In the case of an employee, section 280A(c)(1) will apply only if the home office is used "for the convenience of his employer." Section 280A(c)(1). Neither the statute nor the proposed regulations provide us with any guidance as to when an office would be considered used for the convenience of an employer. Such use, however, has been found where the employee must maintain the office as a condition of his employment, Green v. Commissioner, 78 T.C. 428 (1982), revd. on other grounds 707 F.2d 404 (9th Cir. 1983), or where the home office was necessary for the functioning of the employer's business, or necessary to allow the employee to perform his duties properly. See Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984); see also Drucker v. Commissioner, 715 F.2d 67, 70 (2d Cir. 1983), revg. 79 T.C. 605 (1982). The record in this case does not support petitioner's *357 contention that the home office was used for the convenience of Tic Toc. We have no doubt that petitioner did spend time at home answering telephone inquiries from the employees under his supervision and perhaps doing various other paper work such as the scheduling of employees and inventory examination. However, petitioner maintained no records of the amount of time spent at his home office. There is no evidence that petitioner's employer required him to do any work at home. Many people engaged in business find it helpful to take work home with them, but that does not automatically establish that the home office is maintained for the convenience of their employer. Hamacher v. Commissioner, supra, slip op. at 17. Even if petitioner used his home office for the convenience of his employer, the deduction cannot be allowed. Having changed his claim for the home office to an "employee business expense," petitioner neglected to prove the extent of the use of the office for his Amway/Yurika activities. Based on the record presented, we are therefore unable to conclude that such use qualifies as regular or exclusive use for a principal place of business for that activity. Indeed, most *358 of the evidence concerning Amway/Yurika reflects activities outside petitioner's home -- at Tic Toc stores, restaurants, and other people's homes. Moreover, because of the multiple use of the office, there must be evidence allocating the several uses to the gross income derived for such uses for proper application of section 280A(c)(5). No such allocation was provided herein. Therefore, we sustain respondent's disallowance. Finally, we turn to the claim that a portion of petitioner's living room is deductible as a home office. In 1983, petitioner was interested in acting and became acquainted with an actor named Bruce Glover. Petitioner and Mr. Glover worked out an arrangement whereby Mr. Glover would conduct acting classes in petitioner's home. If the class involved more than nine students, Mr. Glover would reimburse petitioner for any expenses incurred in using the home. There is no evidence in the record that petitioner was to receive any profits or income from this activity. On these limited facts, we hold that petitioner has not overcome the prohibition of section 280A(c)(5). There was no gross income from this activity. The possible reimbursement of expenses does not *359 satisfy the statute. Moreover, there is no evidence, other than petitioner's testimony, that the living room was exclusively used for acting purposes or that it was so used regularly. Petitioner indicates that the acting classes were conducted only until May 1983 (although petitioner seems to have claimed a full year's use of the living room on his return). We find it incredible that petitioner, his wife, and two children lived in an apartment consisting of three bedrooms, a kitchen, a living room, and "office space" and never used the living room during the entire period for any personal purposes. We hold for respondent on the issue of home office expenses with regard to the expenses for rent and utilities. With regard to the telephone expenses, petitioner must establish the actual use of the telephone for business purposes. See, e.g., Levine v. Commissioner, T.C. Memo. 1983-342.The base charge for the telephone is not deductible as it has not been shown that petitioner would not have had a phone, but for the business use. No records were maintained or presented as to long distance or toll call charges related to petitioner's business activities. Accordingly, petitioner is not *360 entitled to any deduction for telephone use. d. Petitioner claimed travel and entertainment expense of $ 888.54, of which $ 819 was disallowed. No evidence was presented with regard to the amount not disallowed, so we presume that the evidence pertained only to amounts disallowed. Petitioner submitted restaurant ($ 245.31) and grocery store ($ 45.84) receipts in the total amount of $ 291.15 to support his testimony that he provided meals to his Amway customers and associates. The restaurant receipts identified the customers and associates that were entertained. Apparently, meetings were held with prospective customers, after which it was customary to go out for lunch, dinner, or coffee, at which time additional business discussions took place. However, the connection between the grocery receipts and business meetings is too tenuous to constitute adequate substantiation. Sec. 274(d). Accordingly, we hold that petitioner has only been able to substantiate additional travel and entertainment expenses of $ 245.31. e. The final item disallowed by respondent was for educational expenses of $ 425. The parties agree that petitioner did expend this amount for acting classes, although *361 the details of the expenditures were not made known to the Court. Petitioner had always been interested in acting. He had been involved in community theater and had played some roles on a nonprofessional basis. Additionally, in 1983, petitioner was paid $ 1003 for his performance in a play. As relevant herein, education expenses are allowable as a business expense to the extent that the expenses are incurred to improve or maintain skills required by the taxpayer in his employment or other trade and business. Section 1.162-5(a), Income Tax Regs. (No claim is made by petitioner that acting had any relation to his Tic Toc or Amway activities.) However, the first requirement is that the taxpayer be engaged in carrying on a trade or business to which these educational expenses pertain. Activities in preparation to go into a trade or business do not qualify. The Supreme Court has stated that to be engaged in a trade or business, "the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). *362 In 1983, petitioner's activities in the acting arena cannot be elevated to the status of carrying on a trade or business. There does not appear to be any continuity or regularity of an income-producing activity. Petitioner's acting activities appear to be more in the nature of a hobby or diversion. Therefore, we sustain respondent's disallowance of the educational expenses. Issue 4. Delinquency. The next issue is whether petitioner is liable for the addition to tax for delinquency under section 6651(a)(1). Section 6651(a)(1) imposes an addition to tax of 5 percent of the amount required to be shown as tax on the return for each month of delinquency, not to exceed 25 percent in the aggregate. Petitioner may avert the imposition of this addition to tax by showing that his failure to timely file was due to a reasonable cause and not due to willful neglect. The facts set forth above with regard to the statute of limitations issue are relevant to the delinquency issue and are incorporated at this point by reference. Petitioner mailed his tax return at the eleventh hour with insufficient postage and no return address on the envelope. He inquired of a postal employee whether sufficient *363 postage was on the envelope and was assured that there was. The postage was insufficient by 17 cents. Under these circumstances, we believe reasonable cause existed for the delinquency and decline to impose the addition to tax for delinquency. [6]
Issue 5. Negligence. Finally, we address the question whether petitioner is liable for the additions to tax for negligence under sections 6653(a)(1) and 6653(a)(2). Section 6653(a)(1) imposes an addition to tax of 5 percent of the understatement if any part of the understatement is due to negligence. Section 6653(a)(2) provides for an additional addition to tax of 50 percent of the interest on that part of the understatement attributable to negligence. Petitioner failed to maintain records reflecting the usage of his Champ vehicle, the usage of his garage for alleged business purposes, the usage of his various areas claimed for "home office," and a substantial portion of his claimed travel and entertainment expense. *364 He claimed a deduction for acting expenses on a Schedule C pertaining to a retailing business. Those acting expenses did not pertain to the retailing business nor any other business actively carried on. Under these circumstances, we think the additions to tax for negligence are properly imposed. Petitioner has not shown that any portion of the deficiency is not due to negligence. Therefore, respondent is sustained both as to section 6653(a)(1) and section 6653(a)(2). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent may have miscalculated this addition to tax. Section 6651(b)(1) provides that the addition to tax imposed under section 6651(a)(1) shall be imposed on the tax required to be shown on the return and reduced by any part of the tax which was paid on or before the date prescribed for payment. Prepaid taxes are deemed paid on the due date of the return. Section 6513(b). The record reflects that petitioners had $ 2,664.27 in withheld income tax which respondent may not have taken into consideration.↩
3. April 15, 1984, was a Sunday. Therefore, the due date for individuals filing Federal income tax returns was Monday, April 16, 1984. Sections 6072(a) and 7503.↩
4. There is insufficient evidence of the local transportation use even to enable an estimate for purposes of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). See Vanicek v. Commissioner, 85 T.C. 731, 742-743↩ (1985).
5. We note at this point that the claimed deduction pertaining to the Redwood property includes expenses for January, February, and a portion of March 1983, during which time petitioner was not an employee of Tic Toc.↩
6. This holding is not to be construed as providing a general exception to section 6651(a)(1) for those situations where insufficient postage is placed on the mailing envelope. This holding is limited to its factual environment.↩